[No. S126182. June 20, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
KEVIN MICHAEL BLACK, Defendant and Appellant.

1240

COUNSEL

Eileen S. Kotler, under appointment by the Supreme Court, for Defendant and Appellant.

Deborah A. Kwast, Public Defender (Orange), Thomas Havlena, Chief Deputy Public Defender, Kevin J. Phillips, Assistant Public Defender, and Martin F. Schwarz, Deputy Public Defender, as Amici Curiae on behalf of Defendant and Appellant.

John T. Philipsborn; and Charles D. Weisselberg for California Attorneys for Criminal Justice as Amicus Curiae on behalf of Defendant and Appellant.

Bill Lockyer, Attorney General, Manuel M. Medeiros, State Solicitor General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves and Pamela C. Hamanaka, Assistant Attorneys General, J. Robert Jibson, Judy Kaida, Donald E. De Nicola, Jaime L. Fuster and Lawrence M. Daniels, Deputy Attorneys General, for Plaintiff and Respondent.

David R. LaBahn, George Kennedy, District Attorney (Santa Clara); James P. Fox, District Attorney (San Mateo) and Martin Murray, Assistant District Attorney, for California District Attorneys Association as Amicus Curiae on behalf of Plaintiff and Respondent.

## OPINION

**GEORGE, C. J.**—This case addresses the effect of the decisions of the United States Supreme Court in *Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531] (*Blakely*) and *United States v. Booker* (2005) 543 U.S. 220 [160 L.Ed.2d 621, 125 S.Ct. 738] (*Booker*) on California's determinate sentencing law. It presents the specific question whether a defendant is constitutionally entitled to a jury trial on the aggravating factors that justify an upper term sentence or a consecutive sentence. For the reasons discussed below, we conclude that the judicial factfinding that occurs when a judge exercises discretion to impose an upper term sentence or consecutive terms under California law does not implicate a defendant's Sixth Amendment right to a jury trial.

## I.

Defendant was charged with one count of continuous sexual abuse of a child (Pen. Code, § 288.5),[1] involving victim T.R., and two counts of lewd and lascivious conduct with a child (§ 288, subd. (a)), involving victims A.T. and H.T. The information alleged, as to the first count, that defendant committed the offense by use of "force, violence, duress, menace, and fear of immediate and unlawful bodily injury," and that defendant had substantial sexual conduct with a victim under the age of 14 years, allegations that would affect his eligibility for probation or a suspended sentence. (§ 1203.066, subd. (a)(1), (8).) The information also alleged that defendant committed specified sexual acts with more than one victim, an allegation that, if found true, would subject defendant to a term of imprisonment of 15 years to life on each of the two counts of lewd and lascivious conduct with a child. (§ 667.61, subds. (b), (c), (d).)

---

[1] All further statutory references are to the Penal Code, unless otherwise indicated.

At trial, defendant's stepdaughter T.R. testified that defendant had sexual intercourse with her on several occasions when she was eight or nine years of age. Sometimes, when her mother was working, defendant would take care of her. The incidents occurred at home, in her bedroom or in the bedroom her mother shared with defendant. During some of these incidents, defendant held T.R.'s arms down when she struggled, so that she could not get away. Defendant told her not to tell anyone about what happened; if she did, he would tell her mother a big lie to get her in trouble.

Two of T.R.'s friends (A.T. and H.T.) testified that one day when they were playing with T.R. at her house, defendant told them they could do whatever they wanted, including taking off their clothes. Encouraged by T.R., the girls took off some of their clothing. At defendant's urging, the girls sat in his lap and he rubbed their bare thighs.

The defense contended that the acts as testified to by defendant's step-daughter had not occurred, that she made up the allegations because she was upset by the troubled relationship between her mother and defendant, and that she actually had been molested by a family friend whom she was trying to protect. The defense also contended that defendant's conduct with his step-daughter's friends was innocent, and that by having them sit in his lap he was merely trying to settle them down. The jury found defendant guilty on all counts and found all of the special allegations true.

The offense of continuous sexual abuse of a child is punishable by a term of six, 12, or 16 years' imprisonment. (§ 288.5, subd. (a).) The court sentenced defendant to the upper term of 16 years for that offense, selecting this term based on "the nature, seriousness, and circumstances of the crime." The court noted that defendant had forced the victim to have sexual inter-course with him on numerous occasions, that the victim was particularly vulnerable to him as his stepdaughter, that he had abused a position of trust and confidence, and that he had inflicted emotional and physical injury on the victim.

The court imposed two indeterminate terms of 15 years to life on the lewd conduct counts, consecutive to each other and to the 16-year determinate term, for a total term of imprisonment of 46 years to life. In explaining its reasons for imposing consecutive terms, the court noted that count 2 involved a separate victim (A.T.) from count 1 (T.R.) and occurred on a separate occasion. In addition, count 2 involved a breach of confidence, because the victim had been left in defendant's care. As to count 3, the court stated that offense also involved a different victim (H.T.), and that a consecutive sentence was appropriate because the offense was serious and of a predatory nature, in that defendant had preyed on both his stepdaughter and her friends.

The Court of Appeal affirmed the judgment. Three weeks later, the United States Supreme court issued its decision in *Blakely, supra,* 542 U.S. 296 [124 S.Ct. 2531], in which it held that a defendant in a criminal case is entitled to a jury trial on any fact that increases the maximum sentence to which the defendant is exposed for a particular offense, unless that fact has been admitted by the defendant or is based on the defendant's prior convictions. We granted review to determine the effect of *Blakely* on the validity of the trial court's decisions to impose the upper term sentence on count 1 and to require defendant to serve the sentences on all three counts consecutively. While this matter was pending before us, the high court handed down its decision in *Booker, supra,* 543 U.S. 220 [125 S.C. 788]. At our request, the parties have filed supplemental briefs on the effect of *Booker* on the questions at issue.

## II.

 California's determinate sentencing law became operative on July 1, 1977, replacing the prior system under which most offenses carried an indeterminate sentence. (Added by Stats. 1976, ch. 1135, § 273, p. 5140 and as amended by Stats. 1977, ch. 165, § 1 et seq., pp. 639–680.) In enacting the new sentencing scheme, the Legislature declared that the purpose of imprisonment is punishment, and that this purpose is "best served by terms proportionate to the seriousness of the offense with provision for uniformity in the sentences of offenders committing the same offense under similar circumstances." (§ 1170, subd. (a)(1).) The Legislature further concluded that "the elimination of disparity and the provision of uniformity of sentences can best be achieved by determinate sentences fixed by statute in proportion to the seriousness of the offenses as determined by the Legislature to be imposed by the court *with specified discretion.*" (*Ibid.*, italics added.) The determinate sentencing scheme seeks to achieve greater uniformity in sentencing by providing a limited range of sentencing options for each offense. The sentence may be increased above the range provided for the offense on the basis of statutory enhancements reflecting the defendant's criminal history[2] or particular circumstances of the crime, including, for example, the use of a firearm or other dangerous weapon, infliction of great bodily injury on the victim, the particular vulnerability of the victim (that is, a victim who is young, elderly, or disabled), commission of the crime while released pending trial, the amount of property loss, and the quantity of drugs involved.[3] The

---

[2] See, e.g., section 667.5, subdivision (a) (five years for prior prison term served for a violent felony if the current offense is a violent felony); *id.,* subdivision (b) (one year for a prior prison term served for any felony).

[3] See, e.g., sentence enhancements provided in Penal Code sections 667.9 and 667.10 (victim who is elderly, young, or disabled), 12022 (being armed with a firearm and using a deadly or dangerous weapon), 12022.1 (commission of offense while released on bail or own

law requires that such sentence enhancements be charged and proved to the jury, unless the defendant admits them or waives the right to a jury trial. (See § 1170.1, subd. (e); *People v. Sengpadychith* (2002) 26 Cal.4th 316, 325 [109 Cal.Rptr.2d 851, 27 P.3d 739].)

■ Three terms of imprisonment are specified by statute for most offenses. The judge's discretion in selecting among these options is guided by Penal Code section 1170, subdivision (b), which states that "the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime." In addition, the Judicial Council has been directed to promote uniformity in sentencing by adopting rules that provide criteria for the judge to consider in deciding which term to impose and whether to impose concurrent or consecutive sentences. (§ 1170.3.) Under the applicable rules, "[s]election of the upper term is justified only if, after a consideration of all the relevant facts, the circumstances in aggravation outweigh the circumstances in mitigation." (Cal. Rules of Court, rule 4.420(b).) In imposing the upper term sentence, the court may not consider any fact that is an essential element of the crime itself and may not consider a fact charged and found true as an enhancement unless it strikes the punishment for that enhancement. (§ 1170, subd. (b); Cal. Rules of Court, rule 4.420(c), (d).) The sentencing judge retains considerable discretion to identify aggravating factors. Examples of aggravating factors are listed in the rules of court,[4] but the judge is free to consider any "additional criteria reasonably related to the decision being made." (*Id.*, rule 4.408(a).)

recognizance), 12022.5–12022.55 (use or discharge of a firearm), 12022.6 (amount of loss when property is taken, damaged, or destroyed), 12022.7 and 12022.8 (infliction of great bodily injury), 12022.75 (administering a controlled substance against the victim's will), 12022.9 (infliction of injury on a pregnant woman, resulting in termination of the pregnancy); Health and Safety Code section 11370.4 (amount of controlled substance).

[4] California Rules of Court, rule 4.421 provides: "Circumstances in aggravation include:

"(a) Facts relating to the crime, whether or not charged or chargeable as enhancements, including the fact that:

"(1) The crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness.

"(2) The defendant was armed with or used a weapon at the time of the commission of the crime.

"(3) The victim was particularly vulnerable.

"(4) The defendant induced others to participate in the commission of the crime or occupied a position of leadership or dominance of other participants in its commission.

"(5) The defendant induced a minor to commit or assist in the commission of the crime.

"(6) The defendant threatened witnesses, unlawfully prevented or dissuaded witnesses from testifying, suborned perjury, or in any other way interfered with the judicial process.

"(7) The defendant was convicted of other crimes for which consecutive sentences could have been imposed but for which concurrent sentences are being imposed.

"(8) The manner in which the crime was carried out indicates planning, sophistication, or professionalism.

"(9) The crime involved an attempted or actual taking or damage of great monetary value.

██ Under the determinate sentencing law, the court may rely on aggravating facts that have not been found true by the jury. The facts relevant to the choice of term are to be determined by the court, which "may consider the record in the case, the probation officer's report, other reports including reports received pursuant to Section 1203.3 and statements in aggravation or mitigation submitted by the prosecution, the defendant, or the victim, or the family of the victim if the victim is deceased, and any further evidence introduced at the sentencing hearing." (§ 1170, subd. (b).) Unless the court imposes the middle term, the court must give reasons for its sentencing choice. (*Ibid.*) The judge must state on the record the "reasons for selecting the upper or lower term," including "a concise statement of the ultimate facts which the court deemed to constitute aggravation or mitigation justifying the term selected." (Cal. Rules of Court, rule 4.420(e).)

Defendant contends that the high court's recent decision in *Blakely* renders this statutory procedure unconstitutional because it does not provide the defendant with a jury trial on the aggravating factors relied upon by the judge in imposing an upper term sentence or consecutive sentences. *Blakely* extended the scope of the high court's earlier decision in *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348] (*Apprendi*), which established that a defendant has a federal constitutional right to a jury trial on sentence enhancements, a right that already was accorded California defendants by statute. (See § 1170.1, subd. (e); *People v. Wims* (1995) 10 Cal.4th 293 [41 Cal.Rptr.2d 241, 895 P.2d 77].) *Apprendi* concluded that New Jersey's hate crime law violated the defendant's right to a jury trial. That law provided for an extended term of imprisonment if the trial judge found, by a preponderance of the evidence, that the defendant committed the crime with the purpose of intimidating a group or individual because of race, color, gender, handicap, religion, sexual orientation, or ethnicity. (*Apprendi*, at

---

"(10) The crime involved a large quantity of contraband.

"(11) The defendant took advantage of a position of trust or confidence to commit the offense.

"(b) Facts relating to the defendant, including the fact that:

"(1) The defendant has engaged in violent conduct which indicates a serious danger to society.

"(2) The defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness.

"(3) The defendant has served a prior prison term.

"(4) The defendant was on probation or parole when the crime was committed.

"(5) The defendant's prior performance on probation or parole was unsatisfactory.

"(c) Any other facts statutorily declared to be circumstances in aggravation."

Similarly, the judge's "[s]election of the lower term is justified only if, considering the same facts, the circumstances in mitigation outweigh the circumstances in aggravation." (Cal. Rules of Court, rule 4.420(b).) Examples of mitigating factors, relating to the crime and to the defendant, are listed in California Rules of Court, rule 4.423.

pp. 478–479.)[5] *Apprendi* was based on the principle that the constitutional rights to due process of law and to a jury trial "indisputably entitle a criminal defendant to 'a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.' " (*Apprendi*, at p. 477, quoting *United States v. Gaudin* (1995) 515 U.S. 506, 510 [132 L.Ed.2d 444, 115 S.Ct. 2310].)

In *Apprendi*, the high court rejected the approach it had taken in earlier cases in determining which facts must be treated as elements of the crime, an approach that placed significant weight on whether the legislative body intended to create an element of a crime or, instead, a sentencing factor. For example, in *Almendarez-Torres v. United States* (1998) 523 U.S. 224 [140 L.Ed.2d 350, 118 S.Ct. 1219], decided only two years before *Apprendi*, the high court upheld a defendant's 85-month sentence for illegally reentering the United States after having been previously deported. One subdivision of the statute that established the crime authorized a penalty of up to two years in prison. (8 U.S.C. § 1326(a).) The defendant was sentenced under another subdivision, which authorized a penalty of up to 20 years in prison if the initial deportation was subsequent to a conviction for an aggravated felony. The lower court in *Almendarez-Torres* rejected the argument that because the indictment did not mention the prior aggravated felony conviction, the defendant could not be given the enhanced sentence. The high court approached the question by asking whether Congress intended the fact of the prior aggravated felony conviction to be an element of a separate crime, or to be a factor that a sentencing court might use to increase punishment. (*Almendarez-Torres, supra,* 523 U.S. at p. 228.) After analyzing the language and context of the statute, the court concluded that the provision of the statute setting forth the enhanced punishment for those with an aggravated felony prior conviction was intended to establish a sentencing factor, not an element of a more serious crime, and that this factor could be decided by a judge. (*Id.* at p. 235.)

In *Apprendi*, however, the high court took a different approach, concluding that whether a legislature has chosen to label a fact as an element of the crime or to label it as a separate sentencing factor is not the proper inquiry. A fact that "if found, exposes the criminal defendant to a penalty *exceeding* the maximum he would receive if punished according to the facts reflected in the jury verdict alone" is the functional equivalent of an element of the crime. (*Apprendi, supra,* 530 U.S. at p. 483, fn. omitted.) The court reasoned that a defendant's constitutional right to a jury trial, as understood at the time the federal Constitution was adopted, easily could be undermined if a legislature were free to eliminate that right simply by labeling certain facts as sentencing

---

[5] In California, all aspects of hate crime charges are subject to determination by a jury. (§ 422.55 et seq.)

factors rather than elements. The court in *Apprendi* reasoned that "[a]ny possible distinction between an 'element' of a felony offense and a 'sentencing factor' was unknown to the practice of criminal indictment, trial by jury, and judgment by court as it existed during the years surrounding our Nation's founding." (*Id.* at p. 478.) Thus, the court concluded, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Id.* at p. 490.)

*Apprendi* examined the right to a jury trial in criminal cases as it existed at common law, recognizing a "historic link between verdict and judgment and the consistent limitation on judges' discretion to operate within the limits of the legal penalties provided." (*Apprendi, supra,* 530 U.S. at p. 482.) But the opinion in *Apprendi* also observed that "nothing in this history suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute." (*Id.* at p. 481; see also *Harris v. United States* (2002) 536 U.S. 545, 558 [153 L.Ed.2d 524, 122 S.Ct. 2406].) Thus, *Apprendi* acknowledged that a judge may make factual findings related to the sentencing factors considered by the judge in exercising sentencing discretion within the prescribed statutory range.

Several years after the *Apprendi* decision, *Blakely* extended the jury trial requirement set forth in *Apprendi*, redrawing the line between factual findings that require a jury trial, and sentencing factors on which a judge may make findings. In *Blakely*, the high court held that the prescribed " 'statutory maximum' " for purposes of the right to a jury trial is not necessarily the maximum penalty stated in the statute for the crime; rather, it is "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" (*Blakely, supra,* 542 U.S. at p. 303 [124 S.Ct. at p. 2537].)

The defendant in *Blakely* pleaded guilty to kidnapping his estranged wife and admitted that the crime involved domestic violence and the use of a firearm. These facts, combined with his criminal history, subjected him to a " 'standard range' " sentence of 49 to 53 months under the State of Washington's Sentencing Reform Act. (*Blakely, supra,* 542 U.S. at p. 300 [124 S.Ct. at p. 2535], citing Wn. Rev. Code Ann. § 9.94A.320.) Washington law also permitted the judge to impose an "exceptional sentence" of not more than 10 years for this crime, if he or she found " 'substantial and compelling reasons justifying an exceptional sentence.' " (*Blakely,* at p. 299 [124 S.Ct. at p. 2535], quoting Wn. Rev. Code. Ann. § 9.94A.120(2).) The law listed a nonexclusive set of factors that may justify an exceptional sentence. The reasons justifying an exceptional sentence had to be other than those that

were used in computing the standard sentencing range for the offense. (*State v. Gore* (2001) 143 Wn.2d 288, 315–316 [21 P.3d 262].) The trial judge sentenced Blakely to a term of 90 months on the ground that he had acted with " 'deliberate cruelty,' " one of the grounds listed in the statute as the basis for departure from the standard range in domestic violence cases. (*Blakely, supra,* 542 U.S. at p. 300 [124 S.Ct. at p. 2535].)

The high court in *Blakely* concluded that the rule established in *Apprendi* applies to the facts that justify an exceptional sentence under the Washington sentencing scheme. The court rejected the argument that the "statutory maximum" sentence for Blakely's crime was 10 years because that was the maximum sentence provided by statute for the offense. It stated that "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment'. . . ." (*Blakely, supra,* 542 U.S. at p. 304 [125 S.Ct. at p. 2537, quoting 1 Bishop, Criminal Procedure (2d ed. 1872) § 87, p. 55.) The judge could not have imposed the exceptional sentence based solely on the facts admitted in Blakely's guilty plea, because those facts already were taken into account in establishing the standard range. (*Blakely,* at p. 304 [124 S.Ct. at p. 2538].) Like *Apprendi,* however, *Blakely* acknowledged that not all judicial factfinding in sentencing is impermissible. The court explicitly recognized the legitimate role of "judicial factfinding" in indeterminate sentencing, in which the judge may "implicitly rule on those facts he deems important to the exercise of his sentencing discretion." (*Blakely,* at p. 309 [124 S.Ct. at p. 2540].)

The high court provided additional guidance regarding the distinction between permissible and impermissible judicial factfinding in its more recent decision in *Booker, supra,* 543 U.S. 220 [125 S.Ct. 738]. *Booker* held that the current federal sentencing guidelines violate a defendant's right to a jury trial. The defendant in *Booker* was convicted of possessing at least 50 grams of cocaine, conduct for which the guidelines authorized a sentence of between 210 and 262 months for a person with Booker's criminal history. Booker, however, was sentenced to 360 months because, at the sentencing hearing, the judge found by a preponderance of the evidence that he possessed an additional 566 grams of cocaine, a finding that authorized a longer sentence under the guidelines. A majority of the court, in an opinion written by Justice Stevens, found no significant distinction between the federal sentencing guidelines and the Washington procedures at issue in *Blakely.*[6] "The jury

---

[6] The majority opinion in *Booker* on the substantive constitutional issue was written by Justice Stevens and joined by Justices Scalia, Souter, Thomas, and Ginsburg. These same five justices provided the majority in *Blakely,* which was written by Justice Scalia. Justice Breyer,

never heard any evidence of the additional drug quantity, and the judge found it true by a preponderance of the evidence. Thus, just as in *Blakely*, 'the jury's verdict alone does not authorize the sentence. The judge acquires that authority only upon finding some additional fact.' " (*Booker, supra,* 543 U.S. at p. 235 [125 S.Ct. at p. 751], quoting *Blakely, supra,* 542 U.S. at p. 305 [124 S.Ct. at p. 2538].)

Responding to an argument by the dissenting opinion in *Booker* that the federal guidelines maintain the historical tradition of "judicial authority to increase sentences to take account of any unusual blameworthiness in the manner employed in committing a crime," Justice Stevens explained the basis for *Blakely*'s interpretation of the Sixth Amendment, as follows: "It is quite true that once determinate sentencing had fallen from favor, American judges commonly determined facts justifying a choice of a heavier sentence on account of the manner in which particular defendants acted. *Apprendi,* 530 U.S. at 481. In 1986, however, our own cases first recognized a new trend in the legislative regulation of sentencing when we considered the significance of facts selected by legislatures that not only authorized, or even mandated, heavier sentences than would otherwise have been imposed, but increased the range of sentences possible for the underlying crime. . . . [¶] The effect of the increasing emphasis on facts that enhanced sentencing ranges, however, was to increase the judge's power and diminish that of the jury. . . . [¶] As the enhancements became greater, the jury's finding of the underlying crime became less significant. . . . [¶] . . . The new sentencing practice forced the Court to address the question of how the right of jury trial could be preserved, in a meaningful way guaranteeing that the jury would still stand between the individual and the power of the government under the new sentencing regime." (*Booker, supra,* 543 U.S. at pp. 236–237 [125 S.Ct. at pp. 751–752].)

The high court in *Booker* concluded that the federal guidelines violate the Sixth Amendment because "the relevant sentencing rules are mandatory and impose binding requirements on all sentencing judges." (*Booker, supra,* 543 U.S. at p. 233 [125 S.Ct. at pp. 749–750].) The court acknowledged that if the guidelines had been "merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not violate the Sixth Amendment. *We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range.*" (*Id.* at p. 233 [125 S.Ct. at p. 750], italics added.) But the majority in *Booker* pointed out that the federal sentencing statute requires the judge to impose a sentence within the range

joined by Chief Justice Rehnquist and Justices O'Connor and Kennedy, wrote a dissent to this aspect of the decision in *Booker*, continuing to express disagreement with the reasoning of *Blakely*. (*Booker, supra,* 543 U.S. at pp. 326–330 [125 S.Ct. at pp. 803–805].)

established by the guidelines, "subject to departures in specific, limited cases." (*Id.* at p. 234 [125 S.Ct. at p. 750; see 18 U.S.C. § 3553(a).)

Although a majority of the justices in *Booker* found the federal guidelines unconstitutional under *Blakely*, a different majority of the court—in a separate opinion authored by Justice Breyer (and concurred in by Chief Justice Rehnquist and Justices O'Connor, Kennedy, and Ginsburg)—concluded that in order to remedy the constitutional problem, it was most appropriate to sever and excise the portions of the sentencing statute that made the guidelines mandatory and treat the guidelines as advisory. Under the remaining provisions of the statute, which set forth considerations that guide the judge in imposing sentence, a sentencing court is required to consider the guideline ranges, but is permitted to "tailor the sentence in light of other statutory concerns as well." (*Booker, supra,* 543 U.S. at p. 245 [125 S.Ct. at p. 757].) Justice Breyer's opinion for the court also held that federal appellate courts are required to review a sentence to determine whether it is " 'unreasonable.' " (*Id.* at p. 261 [125 S.Ct. at p. 765].)

The decisions in *Blakely* and *Booker* have raised questions about the permissible scope of judicial factfinding under a variety of sentencing schemes, including those, like California's determinate sentencing law, that specify a presumptive term and require that a judge provide reasons for a sentence above or below that term. Decisions of the intermediate appellate courts in this state have been sharply divided on the question of how *Blakely* affects sentencing in California. The United States Supreme Court has not yet addressed a system that is comparable to California's.[7]

### III.

*Blakely* and *Booker* established a constitutionally significant distinction between a sentencing scheme that permits judges to engage in the type of judicial factfinding typically and traditionally involved in the exercise of judicial discretion employed in selecting a sentence from within the range prescribed for an offense, and a sentencing scheme that assigns to judges the type of factfinding role traditionally exercised by juries in determining the existence or nonexistence of elements of an offense. The first question presented in the case before us is whether a trial judge's decision to impose an upper term sentence under the California determinate sentencing law involves the type of judicial factfinding that traditionally has been performed

---

[7] In her dissenting opinion in *Blakely*, Justice O'Connor commented that the majority's decision cast constitutional doubt on the federal sentencing guidelines as well as similar sentencing systems enacted in various states. (*Blakely, supra,* 542 U.S. at pp. 322–323 [124 S.Ct. at p. 2548–2549].) California was not among the states that Justice O'Connor suggested would be affected by *Blakely*.

by a judge in the context of exercising sentencing discretion or whether it instead involves the type of factfinding that traditionally has been exercised by juries in the context of determining whether the elements of an offense have been proved.[8]

Defendant argues that a jury trial is required on the aggravating factors on which an upper term sentence is based, because the middle term is the "maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict . . . ."* (*Blakely, supra,* 542 U.S. at p. 304 [124 S.Ct. at p. 2537].) The trial court "shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation." (§ 1170, subd. (b); see Cal. Rules of Court, rule 4.420(b).) The court cannot impose the upper term unless there is at least one aggravating factor. An aggravating factor cannot be an element of the offense, and therefore the jury's guilty verdict on the charged offense itself does not establish an aggravating factor. Thus, defendant argues, the middle term is the "statutory maximum" as that phrase is used in *Blakely,* unless an aggravating factor has been established by the jury's findings or the defendant's admission.

■ The mandatory language of section 1170, subdivision (b), does provide some support for defendant's position. But, as the high court has emphasized, in analyzing the Sixth Amendment right to a jury trial, "the relevant inquiry is one not of form, but of effect." (*Apprendi, supra,* 530 U.S. at p. 494.) ■ As further explained below, in operation and effect, the provisions of the California determinate sentence law simply authorize a sentencing court to engage in the type of factfinding that traditionally has been incident to the judge's selection of an appropriate sentence within a statutorily prescribed sentencing range. Therefore, the upper term is the "statutory maximum" and a trial court's imposition of an upper term sentence does not violate a defendant's right to a jury trial under the principles set forth in *Apprendi, Blakely,* and *Booker.*

## A.

■ The federal Constitution permits the court to rely on any number of aggravating factors in exercising its discretion to select the appropriate term

---

[8] Justice Kennard's concurring and dissenting opinion takes issue with this formulation of the question, suggesting that our approach is the same as the one advocated in Justice O'Connor's dissent in *Apprendi* and in Justice Breyer's dissent in *Booker,* and that such an approach was rejected by a majority of the high court. (See conc. & dis. opn., *post,* at p. 1271.) In contrast to the separate opinions referred to by Justice Kennard—which focused on the nature of *the type of fact* at issue (see *Apprendi, supra,* 530 U.S. at p. 535, (dis. opn. of O'Connor, J.); *Booker, supra,* 125 S.Ct. at p. 803 (dis. opn. of Breyer, J.))—we look to *the context* in which the factual determination is to be made, examining whether any authorized judicial factfinding is made in the context of a court's exercise of a traditionally *discretionary* sentencing choice within a prescribed sentencing range.

within the statutory range, by balancing aggravating and mitigating factors, regardless of whether the facts underlying those factors have been found to be true by a jury. "Judicial factfinding in the course of selecting a sentence within the authorized range does not implicate the indictment, jury-trial, and reasonable-doubt components of the Fifth and Sixth Amendments." (*Harris v. United States* (2002) 536 U.S. 545, 558 [153 L.Ed.2d 524, 122 S.Ct. 2406].) Facts that are considered in sentencing within the authorized statutory range "have been the traditional domain of judges; they have not been alleged in the indictment or proved beyond a reasonable doubt. There is no reason to believe that those who framed the Fifth and Sixth Amendments would have thought of them as the elements of the crime." (*Id.* at p. 560.) The facts upon which the judge relies in exercising discretion to select among the available terms for a particular offense "do not pertain to whether the defendant has a legal *right* to a lesser sentence—and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned." (*Blakely, supra,* 542 U.S. at p. 309 [124 S.Ct. at p. 2540].)

■ Under the California scheme, a judge is free to base an upper term sentence on any aggravating factor that the judge deems significant, subject to specific prohibitions on double use of aggravating factors that constitute elements of the crime or an enhancement.[9] The judge's discretion to identify aggravating factors in a case is guided by the requirement that they be "reasonably related to the decision being made." (Cal. Rules of Court, rule 4.408(a).) Thus, section 1170, subdivision (b)'s requirement that the middle term be imposed unless an aggravating factor is found preserves the traditional broad range of judicial sentencing discretion.[10] Although subdivision (b) is worded in mandatory language, the requirement that an aggravating factor exist is merely a requirement that the decision to impose the upper term be *reasonable*.

The majority opinion in *Booker* makes clear that the California sentencing scheme does not present the type of problem that the high court had in mind

---

[9] See California Rules of Court, rule 4.420(c) (fact underlying an enhancement may not be used to impose the upper term unless the court strikes the enhancement) and (d) (fact that is an element of the crime may not be used to impose the upper term).

[10] In this respect, the Arizona capital sentencing scheme at issue in *Ring v. Arizona* (2002) 536 U.S. 584 [153 L.Ed.2d 556, 122 S.Ct. 2428], is distinguishable from the California determinate sentencing scheme. Consistent with constitutional requirements for capital sentencing (see *Zant v. Stephens* (1983) 462 U.S. 862, 876–877 [77 L.Ed.2d 235, 103 S.Ct. 2733]), Arizona law permits the imposition of the death sentence only if one of a limited number of statutorily prescribed aggravating factors is found. In *Ring*, the high court overruled its earlier decision in *Walton v. Arizona* (1990) 497 U.S. 639 [111 L.Ed.2d 511, 110 S.Ct. 3047], and held that the Arizona capital sentencing procedure violated the defendant's right to a jury trial "to the extent that it allows a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for imposition of the death penalty." (*Ring, supra,* 536 U.S. at p. 609.)

when it decided *Blakely*. The high court was concerned with "a new trend in the legislative regulation of sentencing" in which "facts selected by legislatures . . . not only authorized, or even mandated, heavier sentences than would otherwise have been imposed, but increased the range of sentences possible for the underlying crime. . . . [¶] The effect of the increasing emphasis on facts that enhanced sentencing ranges, however, was to increase the judge's power and diminish that of the jury." (*Booker, supra,* 543 U.S. at p. 236 [125 S.Ct. at p. 751].)

The imposition of an upper-term sentence under California's determinate sentencing law does not implicate the concerns described in the majority opinion in *Booker.* To begin with, as a historical matter California's adoption of the determinate sentencing law reduced the length of potential sentences for most crimes, rather than increasing them. Prior to enactment of the determinate sentencing law, most crimes in California carried an indeterminate term, frequently one year to life imprisonment. (See Cassou & Taugher, *Determinate Sentencing in California: The New Numbers Game* (1978) 9 Pacific L.J. 5, 8, 13.) The new law provided a choice among three definite terms for most crimes, with a potential life sentence reserved for only the most serious offenses.

More significantly, the availability of upper term sentences under the determinate sentencing law does not represent a legislative effort to shift the proof of particular facts from elements of a crime (to be proved to a jury) to sentencing factors (to be decided by a judge). The Legislature did not identify all of the particular facts that could justify the upper term. Instead, it afforded the sentencing judge the discretion to decide, with the guidance of rules and statutes, whether the facts of the case and the history of the defendant justify the higher sentence.[11] Such a system does not diminish the traditional power of the jury.[12]

---

[11] In adopting the sentencing rules, the Judicial Council considered and rejected proposals that the rules provide an exclusive list of sentencing criteria and that the criteria be assigned specific weights, on the ground that the Legislature intended to give the sentencing judge discretion in selecting among the lower, middle, and upper terms. The report on which the Judicial Council acted in adopting the rules explains that "an exclusive listing would be inconsistent with the statutory mandate to adopt 'rules providing criteria for the consideration of the trial judge' [§ 1170.3] since this language does not purport to limit the discretion afforded the court in each of the five enumerated sentencing decisions, but calls for criteria which will assist the courts in the exercise of that discretion." (Judicial Council of Cal., Advisory Com. Rep., Sentencing Rules and Sentencing Reporting System (1977) p. 6.) "Any attempt to impose a weighting system on trial courts . . . would be an infringement on the sentencing power of the court." (*Id.,* p. 8.) "The substantive law, and section 1170(a)(1), give discretion to the trial court; the rules can guide, but cannot compel, the exercise of that discretion." (*Id.,* p. 11.)

[12] Some of the language used by the court in *Blakely* does suggest that the circumstance that the trial court has discretion to decide which factors are aggravating is not significant. *Blakely*

As part of the effort to bring greater uniformity to sentencing, the California Legislature did adopt the "new trend in the legislative regulation of sentencing" referenced by Justice Stevens in *Booker*—that is, requiring trial courts to consider "facts selected by legislatures that not only authorized, or even mandated, heavier sentences than would otherwise have been imposed, but increased the range of sentences possible for the underlying crime." (*Booker, supra,* 543 U.S. at p. 236 [125 S.Ct. at p. 751].) But the California Legislature did so in a manner that preserves, rather than undermines, the traditional power of the jury. The determinate sentencing law "selected" facts that authorize a higher sentence by enacting specific *sentencing enhancements* for particular circumstances of the crime such as the use of a firearm or other dangerous weapon, infliction of great bodily injury on the victim, or the amount of property loss.[13] At the same time, it provided defendants with the rights to notice, a jury trial, and proof beyond a reasonable doubt with regard to the determination of these sentencing enhancements. (Cal. Const., art. I, § 16; §§ 1170.1, subd. (e), 1042; see *People v. Sengpadychith, supra,* 26 Cal.4th at p. 325.) Thus, in adopting the determinate sentencing law, the California Legislature attempted to provide sentences that are more uniform and more consistently tailored to the offense and the offender than was the case under the indeterminate sentencing system, without sacrificing the defendant's right to a jury trial on all elements of the crime or their functional equivalents.

### B.

■ The above analysis leads us to conclude that, even though section 1170, subdivision (b) can be characterized as establishing the middle term sentence as a presumptive sentence, the upper term is the "statutory maximum" for purposes of Sixth Amendment analysis. The jury's verdict of guilty on an offense authorizes the judge to sentence a defendant to any of the three terms specified by statute as the potential punishments for that offense, as

rejected the argument that *Apprendi* was distinguishable because under the Washington statute the grounds for imposing an exceptional sentence that are enumerated in the statute are illustrative rather than exclusive. "This distinction is immaterial. Whether the judge's authority to impose an enhanced sentence depends on finding a specified fact (as in *Apprendi*), one of several facts (as in *Ring* [*v. Arizona, supra,* 536 U.S. 584 [153 L.Ed.2d 556, 122 S.Ct. 2428]]), or *any* aggravating fact (as here), it remains the case that the jury's verdict alone does not authorize the sentence. The judge acquires that authority only upon finding some additional fact." (*Blakely, supra,* 542 U.S. at p. 305 [124 S.Ct. at p. 2538], fn. omitted.) Although the trial court's discretion to decide which facts are aggravating was not found to be a controlling factor in *Blakely*, in view of the high court's more recent clarification in *Booker* of the rationale underlying the *Apprendi* and *Blakely* decisions we do not believe that the foregoing passage in *Blakely* signifies that it is inappropriate to consider this aspect of the California scheme in the context of the policies that underlie the high court's Sixth Amendment jurisprudence.

[13] See footnote 3, *ante.*

long as the judge exercises his or her discretion in a reasonable manner that is consistent with the requirements and guidelines contained in statutes and court rules. The judicial factfinding that occurs during that selection process is the same type of judicial factfinding that traditionally has been a part of the sentencing process. Therefore, the upper term is the "maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict. . . ."* (*Blakely, supra,* 542 U.S. at p. 303 [124 S.Ct. at p. 2537].)

The concerns expressed by the high court in *Blakely* about the unfairness of imposing a sentence above the standard range do not arise when a defendant is sentenced to the upper term under the California scheme. The court noted the unfairness of the type of system that was permissible before *Apprendi,* in which "a defendant, with no warning in either his indictment or plea, would routinely see his maximum potential sentence balloon from as little as five years to as much as life imprisonment . . . ." (*Blakely, supra,* 542 U.S. at p. 311 [124 S.Ct. at p. 2542].) Defendants who are charged with an offense and either plead guilty or are tried and convicted cannot reasonably expect a guarantee that the upper term will not be imposed. Only in a case in which a judge could not reasonably identify any relevant aggravating factor in either the circumstances of the crime or the defendant's prior or current criminal conduct, would the judge be limited to imposing no more than a middle-term sentence.

The level of discretion afforded to the judge in imposing the upper term rather than the middle term, based on all the circumstances of the case, distinguishes the decision to impose an upper term sentence under the California scheme from the decision to impose an exceptional sentence under the Washington State system. Under Washington law as cited in *Blakely,* as the term suggests, an exceptional sentence may be imposed only in unusual cases. The judge must conclude that there are " '*substantial and compelling reasons*' " that justify " 'an exceptional sentence.' " (*Blakely, supra,* 542 U.S. at p. 311 [124 S.Ct. at p. 2535], quoting Wn. Rev. Code Ann. § 9.94A.120(2) (2000), italics added.)[14] The standard sentencing range al-

---

[14] The available data suggests, as one might expect, that the exceptional sentence in Washington is imposed less frequently than is the upper term in California. In Washington, sentences above the standard range were imposed in only 3 percent of cases in fiscal years 2003 and 2004. (Wn. State Sentencing Guidelines Com., Statistical Summary of Adult Felony Sentencing, Fiscal Year 2004, p. 22; see *id.,* Fiscal Year 2003, p. 21.) The available data for California covers the period from 1981 through 1988, and indicates that in cases involving a single count, the percentage of cases in which the upper term was imposed ranged from 13.36 percent to 17.73 percent. (Cal. Bd. Prison Terms, Report on Sentencing Practices, Determinate Sentencing Law (Feb. 10, 1983); *id.* (Feb. 29, 1984); *id.* (Feb. 28, 1985); *id.* (June 23, 1986); *id.* (Mar. 12, 1987); *id.* (Jan. 15, 1988); *id.* (Jan. 31, 1989); *id.* (Jan. 31, 1990).)

ready takes into account the defendant's criminal history.[15] As Justice Stevens explained in *Booker*, the court concluded in *Blakely* that the top of the Washington standard range—rather than the upper limit that was specified for the crime in statute—was the "statutory maximum" for Sixth Amendment purposes, because in most cases the standard range takes into account all relevant factors and no higher sentence is legally permissible. (*Booker, supra,* 543 U.S. at p. 234 [125 S.Ct. at p. 750].) "[A]lthough the Washington statute allowed the judge to impose a sentence outside the sentencing range for ' "substantial and compelling reasons," ' that exception was not available for Blakely himself. (542 U.S. at p. 300 [124 S.Ct. at p. 2535].) The sentencing judge would have been reversed had he invoked the departure section to justify the sentence." (*Booker, supra,* 543 U.S. at p. 234 [125 S.Ct. at pp. 750–751].)

The federal guidelines limit the trial court's discretion even more than the Washington system does, and they are therefore even less analogous to the California system. The guideline ranges take into account not only the offense committed, but also the defendant's real conduct and criminal history. (See Haines et al., Federal Sentencing Guidelines Handbook (2004) pp. 31–32.)[16] The judge must make findings on any relevant factors specified in the guidelines, each of which results in a specified increase in the sentencing range. Once that applicable range has been identified, a departure is permitted only if the judge "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration" in the guidelines. (18 U.S.C. § 3553(b).) "In most cases, as a matter of law, the Commission will have adequately taken all relevant factors into

---

[15] Under the current version of the Washington statute, a defendant is assigned an offender score of between 0 and 9, which affects the standard sentencing range. (See Wn. Rev. Code, § 9.94A.525.) For example, a defendant who is convicted of second degree kidnapping and who had an offender score of 0 would be eligible for a standard sentence of between six and 12 months, whereas a defendant with an offender score of 9 would be eligible for a standard sentence of between 72 and 96 months. (Wn. Rev. Code, § 9.94A.510.)

[16] Under the federal guidelines, a chart specifies the punishment ranges for various offense levels, which range between one and 43, and also specifies various criminal history categories, which range from one to six. Each offense is assigned to a particular base level. In addition, the offense level is raised by a specified number based on the defendant's conduct and role in the offense. For example, robbery is assigned a base offense level of 20. That level is raised on the basis of specified offense characteristics for robbery, including, for example, discharge of a firearm (seven levels), use of a dangerous weapon (four levels), bodily injury to a victim (two levels), serious bodily injury (four levels), permanent bodily injury (six levels), and amount of loss (between one and seven levels, depending on the amount). (U.S. Sentencing Com., Guidelines Manual, § 2B3.1.) Additional adjustments are made on the basis of conduct not specific to a particular offense, including, for example, victim characteristics (three levels for a hate crime, two levels if the victim was vulnerable), the defendant's role in the offense (two levels if the defendant was an organizer, leader, manager, or supervisor in the activity), and the defendant's impeding the administration of justice (two levels). (*Id.,* §§ 3A1.1, 3B1.1, 3C1.1.)

account, and no departure will be legally permissible." (*Booker, supra*, 543 U.S. at p. 234 [125 S.Ct. at p. 750].)

### C.

*Apprendi, Blakely,* and *Booker* all make clear that judicial factfinding is acceptable in the context of a discretionary sentencing decision. On the other hand, *Blakely* may apply to a sentencing decision even if the law permits some level of judicial discretion, as the Washington system does for exceptional sentences. In California, the judge has considerable discretion to select among the upper, middle, and lower terms, but the judge's discretion to impose a sentence other than the middle term is constrained, to some degree, by section 1170, subdivision (b). The judge has broad discretion to decide whether any circumstances related to the crime or the offender reasonably justify the upper term, but in a case in which no such aggravating factor can be found, the judge cannot impose the upper term. The question we must answer is where the line is to be drawn between permissible judicial factfinding in the context of the judge's exercise of sentencing discretion, and judicial factfinding that violates the Sixth Amendment right to a jury trial.

In answering this question, we are mindful of the principle that "[a]ll presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity. Statutes must be upheld unless their unconstitutionality clearly, positively and unmistakably appears." (*Lockheed Aircraft Corp. v. Superior Court* (1946) 28 Cal.2d 481, 484 [171 P.2d 21]; accord, *Voters for Responsible Retirement v. Board of Supervisors* (1994) 8 Cal.4th 765, 780 [35 Cal.Rptr.2d 814, 884 P.2d 645]; *Calfarm Ins. Co. v. Deukmejian* (1989) 48 Cal.3d 805, 814 [258 Cal.Rptr. 161, 771 P.2d 1247]; *Walker v. Superior Court* (1988) 47 Cal.3d 112, 143 [253 Cal.Rptr. 1, 763 P.2d 852].)

The high court's precedents do not draw a bright line, but *Booker* makes clear that the concept of a discretionary sentencing decision is not limited to those decisions that involve complete, unguided, and unreviewable discretion. To remedy the constitutional problem with the federal guidelines, the high court held that the federal guidelines should be treated as advisory only, not binding, but that courts would be required to consider the guidelines in exercising sentencing discretion within the statutory range. The high court did not contemplate that the trial court's exercise of discretion in sentencing under such an advisory system would be unlimited. After *Booker*, a federal judge, while not bound to apply the guidelines, must consult those guidelines and take them into account when sentencing. (*Booker, supra*, 543 U.S. at p. 258 [125 S.Ct. at p. 764].) The judge also must consider the pertinent United States Sentencing Commission policy statements and "the need to

avoid unwarranted sentencing disparities." (*Ibid.*, citing 18 U.S.C. § 3553(a)(4).) The federal judge must impose sentences that "reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and effectively provide the defendant with needed educational or vocational training and medical care." (*Booker, supra,* 543 U.S. at p. 260 [125 S.Ct. at p.765], citing 18 U.S.C. § 3553(a)(1), (3), (5)–(7).) The sentence may be reviewed by an appellate court for unreasonableness. (*Booker, supra,* 543 U.S. at pp. 260–261 [125 S.Ct. at pp. 765–766].)

■ In *Booker*, all nine justices of the United States Supreme Court agreed that such a discretionary system would not violate a defendant's Sixth Amendment right to a jury trial. (See *Booker, supra,* 543 U.S. at p. 233 [125 S.Ct. at p. 750] (maj. opn. of Stevens, J.) ["Indeed, everyone agrees that the constitutional issues presented by these cases would have been avoided entirely if Congress had omitted . . . the provisions that make the Guidelines binding on district judges"].) The level of discretion available to a California judge in selecting which of the three available terms to impose appears comparable to the level of discretion that the high court has chosen to permit federal judges in post-*Booker* sentencing. Because an aggravating factor under California law may include any factor that the judge reasonably deems to be relevant, the determinate sentencing law's requirement that an upper term sentence be imposed only if an aggravating factor exists is comparable to *Booker*'s requirement that a federal judge's sentencing decision not be unreasonable. Furthermore, both systems require the judge to make factual determinations. Under the California system, the judge must identify and consider the aggravating and mitigating factors that are present. Under the post-*Booker* federal sentencing system, the sentencing judge will have to identify all the facts that are relevant in determining the appropriate guidelines range as well as any other facts that may justify imposition of a sentence above or below the guidelines range. Accordingly, we do not believe that the high court's decisions compel the conclusion that the trial court's identification of aggravating factors, in selecting a sentence within the upper, middle, and lower term range of sentences provided under California law, is unconstitutional.

## IV.

■ We next consider whether *Blakely* applies to the imposition of consecutive sentences under section 669. Defendant contends that *Blakely* entitles him to a jury trial on any facts that support the trial court's decision to impose consecutive terms. Under the applicable statute, whenever a person is convicted of two or more crimes the judge must direct whether the terms of imprisonment for the offenses are to run concurrently or consecutively.

(§ 669.) If the judge fails to direct how the terms are to run, they must run concurrently. (*Ibid.*) If the judge directs that a determinate term is to run consecutively to another term, he or she must state on the record "the primary factor or factors that support the exercise of discretion." (Cal. Rules of Court, rule 4.406(a); see *id.*, rule 4.406(b); § 1170, subd. (c); see also *People v. Tran* (1996) 47 Cal.App.4th 759, 774 [54 Cal.Rptr.2d 905]; *People v. Dixon* (1993) 20 Cal.App.4th 1029, 1036–1037 [25 Cal.Rptr.2d 208] [judge must give reasons for imposing a determinate term consecutively to an indeterminate one].)[17]

 The governing rule of court further provides that in exercising discretion whether to impose concurrent or consecutive sentences, the judge may consider any circumstances in aggravation or mitigation, except an element of the crime or an aggravating fact that has been used to impose the upper term or otherwise enhance the prison term. (Cal. Rules of Court, rule 4.425(b).) The judge also may consider the relationship between the crimes, including (1) whether the crimes and their objectives were independent of each other, (2) whether they involved separate acts of violence or threats of violence, and (3) whether they were committed at different times or separate locations. (*Id.*, rule 4.425(a).) Defendant contends that under section 669 and the rules of court, the trial court cannot impose a consecutive term without making additional factual findings not contained within the jury's verdict. Therefore, defendant argues, concurrent terms are the "statutory maximum" that can be imposed based upon the jury's verdict alone, and any finding of a further fact or circumstance that would justify imposition of consecutive terms must be submitted to the jury.

 The same reasoning that leads us to conclude that a jury trial is not required on the aggravating factors that justify imposition of the upper term leads us to conclude that a jury trial is not required on the aggravating factors that justify imposition of consecutive sentences. Under section 669, the judge has discretion to determine whether to impose sentences consecutively or concurrently. "Judicial factfinding in the course of selecting a sentence within the authorized range does not implicate the indictment, jury-trial, and reasonable-doubt components of the Fifth and Sixth Amendments." (*Harris v. United States, supra,* 536 U.S. at p. 558.)

In addition, *Blakely*'s underlying rationale is inapplicable to a trial court's decision whether to require that sentences on two or more offenses be served consecutively or concurrently. We previously have recognized that *Apprendi* "treated a sentence enhancement as the functional equivalent of a crime.

---

[17] No reason need be stated on the record for directing that indeterminate terms run consecutively to one another. (*People v. Murray* (1991) 225 Cal.App.3d 734, 750 [275 Cal.Rptr. 498]; *People v. Arviso* (1988) 201 Cal.App.3d 1055, 1058 [247 Cal.Rptr. 559].)

[Citation.] To put it more accurately, *Apprendi* treated the crime together with its sentence enhancement as the 'functional equivalent' of a single 'greater' crime. [Citation.]" (*People v. Sengpadychith, supra,* 26 Cal.4th at p. 326.) Similarly, *Blakely* treats the crime together with a fact that is a prerequisite to eligibility for a greater punishment as the functional equivalent of a greater crime. The high court's decisions in *Blakely* and *Apprendi* are intended to protect the defendant's historical right to a jury trial on all elements of the crime, which the court concluded would be jeopardized if a legislature could label facts affecting the length of the authorized sentence for an offense as sentencing factors rather than as elements and thereby eliminate the right to a jury trial on such facts.

No such danger is created by a statute that permits judges to decide whether to impose consecutive sentences without jury factfinding. The jury's verdict finding the defendant guilty of two or more crimes authorizes the statutory maximum sentence for each offense. When a judge considers the circumstances of each offense and the defendant's criminal history in determining whether the sentences are to be served concurrently or consecutively, he or she cannot be said to have usurped the jury's historical role. Permitting a judge to make any factual findings related to the choice between concurrent or consecutive sentences does not create an opportunity for legislatures to eliminate the right to a jury trial on elements of the offenses. Nothing in the high court's decisions in *Apprendi*, *Blakely*, or *Booker* suggests that they apply to factual determinations that do not serve as the "functional equivalent" of an element of a crime.[18]

██ Before *Blakely* was decided, numerous cases held that *Apprendi* does not apply to the decision to impose consecutive sentences.[19] In addition, California cases held that *Apprendi* does not apply to the factual determinations made by the trial judge in connection with the decision whether to stay

---

[18] Consistent with this rationale, the high court in *Apprendi* focused on the potential punishment for a single offense. In *Apprendi*, the court rejected the state's argument that the sentence imposed on the defendant in that case was within the statutory maximum because it was less than the total maximum term for which he was eligible, had the sentences on *all* of his offenses been imposed consecutively. Based solely upon the jury's verdicts, Apprendi was eligible for a 10-year term on the offense at issue in that case, and for additional terms for two other offenses. The state argued the sentence was valid because it was within the total range authorized by statute for the three offenses to which he pleaded guilty. The court in *Apprendi* concluded, however, that the sentences on the two other counts were irrelevant. The judge's factual finding on the first offense was significant, because it "increased—indeed, it doubled—the maximum range within which the judge could exercise his discretion." (*Apprendi, supra,* 530 U.S. at p. 474.)

[19] See, e.g., *People v. Groves* (2003) 107 Cal.App.4th 1227, 1230–1231 [132 Cal.Rptr.2d 744]; *Wright v. State* (Alaska Ct.App. 2002) 46 P.3d 395; *People v. Clifton* (Colo.Ct.App. 2001) 69 P.3d 81; *People v. Wagener* (2001) 196 Ill.2d 269 [752 N.E.2d 430, 256 Ill.Dec. 550]; *State v. Bramlett* (2002) 273 Kan. 67 [41 P.3d 796].

sentences on particular counts under the provisions of section 654 prohibiting multiple punishment. (*People v. Solis* (2001) 90 Cal.App.4th 1002, 1021–1022 [109 Cal.Rptr.2d 464]; *People v. Cleveland* (2001) 87 Cal.App.4th 263, 270–271 [104 Cal.Rptr.2d 641].) Nothing in *Blakely* or *Booker* undermines the conclusions reached in these cases. For purposes of the right to a jury trial, the decision whether section 654 requires that a term be stayed is analogous to the decision whether to sentence concurrently. Both are sentencing decisions made by the judge after the jury has made the factual findings necessary to subject the defendant to the statutory maximum sentence on each offense, and neither implicates the defendant's right to a jury trial on facts that are the functional equivalent of elements of an offense.

## V.

 In light of the conclusions set forth above, we conclude defendant's constitutional right to a jury trial was not violated by the trial court's imposition of the upper term sentence for his conviction of continuous sexual abuse or by its imposition of consecutive sentences on all three counts. The decision of the Court of Appeal therefore is affirmed.

Baxter, J., Werdegar, J., Chin, J., Brown, J., and Moreno, J., concurred.

**KENNARD, J.,** Concurring and Dissenting.—The question here is this: Do the United States Supreme Court's recent trio of decisions in *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348] (*Apprendi*), *Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531] (*Blakely*), and *United States v. Booker* (2005) 543 U.S. 220 [160 L.Ed.2d 621, 125 S.Ct. 738] (*Booker*) affect California's determinate sentencing law? More precisely, is a defendant entitled to have a jury determine the existence of either (1) an aggravating circumstance that would support the trial court's imposition of *consecutive* sentences, or (2) an aggravating circumstance justifying the court's imposition of an "upper term," which in California is the highest of three possible prison terms for most felonies? The majority's answer to each question is "no."

I agree with that answer as to the first question.

With respect to the second question, however, I disagree with the majority's holding that an upper term sentence will *never* violate a defendant's constitutional right to a jury trial. Under California law, a trial court may impose an upper term only if it concludes that the greater punishment is justified by one or more aggravating circumstances, which may be either facts relating to the crime or facts relating to the defendant's criminal history. Under the three high court decisions I just mentioned, the

Sixth Amendment to the federal Constitution guarantees a defendant a right to a jury trial on any aggravating fact (other than a fact concerning the defendant's criminal history) that the trial court uses to impose an upper term. This means that under California's sentencing scheme a trial court may use an aggravating fact to justify an upper term only if: (1) a jury has made a finding on the aggravating fact, (2) the defendant has admitted the aggravating fact, (3) the defendant has validly waived the right to a jury trial on the aggravating fact, or (4) the aggravating fact relates to the defendant's criminal record rather than to the circumstances of the conviction offense. Absent one of these situations, the trial court may not impose an upper term sentence.

Here, the trial court relied on certain aggravating facts to justify sentencing defendant to an upper term. Because one of those aggravating facts related to defendant's criminal history, and because the jury made a finding on another aggravating fact when it found true an allegation that made defendant ineligible for probation, the trial court's imposition of the upper term did not violate defendant's right to jury trial under the federal Constitution. For this reason, I join the majority in affirming the trial court's judgment, even though I disagree with the majority's conclusion that imposition of an upper term under California's sentencing scheme *never* implicates a defendant's constitutional right to trial by jury.

## I. BACKGROUND

Defendant was convicted of one count of engaging in continuous sexual abuse of a child (Pen. Code, § 288.5),[1] his stepdaughter. He was also convicted of two counts of child molestation (§ 288, subd. (a)) based on allegations that he molested two of his stepdaughter's friends. The jury found true special allegations, affecting probation eligibility, that defendant used force or fear in committing the section 288.5 violation and that he had engaged in "substantial sexual conduct" with his stepdaughter (§ 1203.066, subd. (a)(1), (8)); the jury also found that the three crimes involved multiple victims, qualifying him for an indeterminate sentence under the "One Strike" law (§ 667.61).

The trial court imposed the upper term of 16 years for the violation of section 288.5 (continuous sexual abuse of a child), giving these reasons: Defendant forced his stepdaughter to have intercourse with him on numerous occasions, defendant's stepdaughter was particularly vulnerable, defendant abused a position of trust and confidence, and defendant inflicted emotional and physical injury on his stepdaughter. The court also mentioned that it had

---

[1] All statutory citations are to the Penal Code.

considered other factors described in the prosecutor's brief. These factors were: the crime involved a high degree of cruelty and callousness, and it showed planning or sophistication; defendant's violent conduct showed that he was a danger to society; and defendant's prior misdemeanor and felony convictions were of increasing seriousness. Applying the One Strike law, the court also imposed a consecutive term of 15 years to life for each of the two child molestation violations under section 288, subdivision (a).

With respect to the one count under section 288.5 (continuous sexual abuse of a child), defendant argues that under the Sixth Amendment to the federal Constitution he was entitled to have a jury determine beyond a reasonable doubt the existence of each of the aggravating factors justifying imposition of the upper term.

## II. CALIFORNIA'S SENTENCING SCHEME

California law specifies a range of three prison terms for most felonies: the upper term, the middle term, and the lower term. Pertinent here is subdivision (b) of section 1170, which states: "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court *shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation* of the crime." (Italics added.) This provision is echoed in rule 4.420(b) of the California Rules of Court: "Selection of the upper term is justified *only if,* after a consideration of all the relevant facts, *the circumstances in aggravation outweigh the circumstances in mitigation.*" (Italics added.) Thus, under California's sentencing scheme, the trial court cannot impose the upper term unless it finds the existence of one or more aggravating circumstances. That finding is made under a "preponderance of the evidence" standard. (*Ibid.*; *People v. Scott* (1994) 9 Cal.4th 331, 349 [36 Cal.Rptr.2d 627, 885 P.2d 1040].)

## III. UNITED STATES SUPREME COURT'S RECENT SENTENCING DECISIONS

Pertinent here is the high court's trilogy of recent sentencing decisions: *Apprendi, supra,* 530 U.S. 466, *Blakely, supra,* 542 U.S. 296 [124 S.Ct. 2531], and *Booker, supra,* 543 U.S. 220 [125 S.Ct. 738].

*Apprendi,* decided in 2000, involved a New Jersey law that provided for an extended term of imprisonment if the trial court found by a preponderance of the evidence that the crime was committed " 'to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity.' " (*Apprendi, supra,* 530 U.S. at p. 469.) The high court held that before imposition of the extended sentence the defendant was

entitled to a jury trial at which the prosecution had to prove beyond a reasonable doubt the facts justifying the extended commitment. The court explained that any fact exposing the defendant "to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone" (*Apprendi, supra,* at p. 483, italics & fn. omitted) is the equivalent of an element of the crime, thus triggering the Sixth Amendment's right to a jury trial. Generally, "any fact that increases the penalty for a crime beyond the prescribed *statutory maximum*[2] must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi,* at p. 490, italics added.) Outside the ambit of this rule, the court said, are *prior convictions,* because "recidivism 'does not relate to the commission of the offense' itself" (*id.* at p. 496), and because "there is a vast difference between accepting the validity of a prior judgment of conviction entered in a proceeding in which the defendant had a right to a jury trial and the right to require the prosecutor to prove guilt beyond a reasonable doubt, and allowing the judge to find [a] required fact under a lesser standard of proof" (*ibid.*).

Some four years later, in 2004, the high court in *Blakely* applied its *Apprendi* holding to the State of Washington's sentencing scheme. In that case, the defendant was convicted of second degree kidnapping with a firearm, a felony punishable by up to 10 years in prison. Under Washington law, the " 'standard range' " for the crime was 49 to 53 months, but a trial court could exceed that range if it found " 'substantial and compelling reasons justifying an exceptional sentence.' " (*Blakely, supra,* 542 U.S. at p. 300 [124 S.Ct. at p. 2535].) The law contained a nonexclusive list of aggravating factors. The trial court found the existence of one of those factors (deliberate cruelty) and imposed a 90-month sentence. (*Ibid.*)

*Blakely* invalidated the State of Washington's sentencing scheme insofar as it did not provide the defendant with a jury trial, requiring proof beyond a reasonable doubt, on the existence of aggravating factors used to increase the defendant's sentence. The *Blakely* court reiterated its holding in *Apprendi* that " 'any fact that increases the penalty for a crime beyond the prescribed *statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt.' " (*Blakely, supra,* 542 U.S. at p. 301 [124 S.Ct. at p. 2536], italics added, quoting *Apprendi, supra,* 530 U.S. at p. 490.) The term "statutory maximum," *Blakely* explained, is "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" (*Blakely, supra,* 542 U.S. at p. 303 [124 S.Ct. at p. 2537].) "In other words," *Blakely* said, "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional

---

[2] In a later decision, *Blakely, supra,* 542 U.S. 296 [124 S.Ct. 2531], the United States Supreme Court explained the meaning of the term "statutory maximum."

findings. When the judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment,' [citation] and the judge exceeds his proper authority." (*Ibid.*) "[E]very defendant," the high court held, "has the *right* to insist that the prosecutor prove to a jury all facts legally essential to the punishment." (*Id.* at p. 313 [124 S.Ct. at p. 2543].)

The next year, in *Booker, supra*, 543 U.S. 220 [125 S.Ct. 738], the high court had to determine whether, under *Apprendi, supra*, 530 U.S. 466, and *Blakely, supra*, 542 U.S. 296 [124 S.Ct. 2531], the Federal Sentencing Guidelines violated the Sixth Amendment's right to a jury trial. The decision had two majority opinions, each deciding a distinct issue.

The first opinion, authored by Justice Stevens, addressed the question whether the Federal Sentencing Guidelines violated the Sixth Amendment. Of particular significance here is part II of that opinion. (*Booker, supra*, 543 U.S. at pp. 229–237 [125 S.Ct. at pp. 748–752].) There, the high court explained that if the guidelines were "merely advisory," "their use would not implicate the Sixth Amendment," because judges may "exercise broad discretion in imposing a sentence within a statutory range." (*Booker, supra*, 543 U.S. at p. 233 [125 S.Ct. at p. 750].) But, it noted, the guidelines "are mandatory and binding on all judges" (*ibid.*) because they state that the sentencing court " '*shall* impose a sentence of the kind, and within the range' established by the Guidelines, subject to departures in specific, limited cases" (*ibid.*). Thus, *Booker* held, the Federal Sentencing Guidelines were unconstitutional.

The second majority opinion, authored by Justice Breyer, discussed the remedy for the constitutional violation found in the first opinion. Explaining that there were two possible remedies—(1) to engraft onto the guidelines a jury trial requirement, or (2) to make the guidelines advisory rather than mandatory—the court chose the latter, reasoning that to engraft a jury trial requirement onto the sentencing guidelines would destroy them. It concluded that the provisions in the federal sentencing statute that made the guidelines mandatory and that set forth standards of review on appeal should be severed and excised, and that, with these excisions, the remainder of the guidelines were constitutional. (*Booker, supra*, 543 U.S. at pp. 258–265 [125 S.Ct. at pp. 764–768].)

To summarize: the high court's decisions in *Apprendi, supra*, 530 U.S. 466, *Blakely, supra*, 542 U.S. 296 [124 S.Ct. 2531], and *Booker, supra*, 543 U.S. 220 [125 S.Ct. 738], hold that unless the defendant waives the right to jury trial, the trial court may not, relying on offense-based facts not found by a jury beyond a reasonable doubt or admitted by the defendant, sentence the defendant to a prison term greater than the maximum sentence authorized by

the jury's verdict. The trial court may exceed the maximum sentence only if justified by the defendant's prior criminal history.

## IV. APPLICATION OF HIGH COURT'S RECENT TRILOGY OF SENTENCING DECISIONS TO CALIFORNIA'S SENTENCING SCHEME

California law prohibits a trial court from sentencing a defendant to the upper term unless it finds the existence of one or more aggravating circumstances. (§ 1170, subd. (b).) Absent such findings, the middle term is the maximum sentence it may impose. Thus, under our system, the statutory maximum, that is, "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict*" (*Blakely, supra,* 542 U.S. at p. 303 [124 S.Ct. at p. 2537]), is the middle term of imprisonment. Insofar as California law permits a trial judge to impose a sentence greater than the statutory maximum, based on facts not found by a jury beyond a reasonable doubt, it violates the Sixth Amendment to the federal Constitution, as construed in *Apprendi, supra,* 530 U.S. 466, *Blakely, supra,* 542 U.S. 296 [124 S.Ct. 2531], and *Booker, supra,* 543 U.S. 220 [125 S.Ct. 738].

This does not mean that a trial court's upper term sentence *always* violates a defendant's jury trial right. If any aspect of the defendant's prior criminal history is an aggravating circumstance, if the jury makes special findings of aggravating facts that justify imposition of the upper term, if the defendant admits the existence of aggravating facts, or if the defendant waives the right to jury trial, the court may impose the upper term without violating the defendant's constitutional rights. But under *Apprendi, supra,* 530 U.S. 466, *Blakely, supra,* 542 U.S. 296 [124 S.Ct. 2531], and *Booker, supra,* 543 U.S. 220 [125 S.Ct. 738], absent waiver of the right to jury trial, the trial court may not impose the upper term, thereby exceeding the statutory maximum, when the decision is based solely on (1) offense-based facts that (2) are not admitted by the defendant and (3) are not found by a jury. In this situation— that is, when the trial court rather than the jury has acted as the trier of fact in determining the existence of one or more offense-based aggravating facts necessary to sustain imposition of an upper term—California's sentencing scheme violates the Sixth Amendment's right to a jury trial.

Here, no violation of the Sixth Amendment occurred, for two reasons: *First,* the jury found true special allegations, pertaining to probation eligibility, that defendant used force or fear in committing the section 288.5 violation and had engaged in "substantial sexual conduct" with the victim (§ 1203.066, subd. (a)(1), (8)). These jury findings were sufficient to support the trial court's imposition of the upper term, even though those findings were made for a different purpose, that of determining probation eligibility. Thus, here the jury found, beyond a reasonable doubt, the existence of facts sufficient to permit the trial court to exceed the middle term in

sentencing defendant. *Second*, in selecting the upper term the trial court relied on the aggravating circumstance that defendant's "prior convictions . . . are numerous or of increasing seriousness." As explained earlier, the United States Supreme Court has held that the Sixth Amendment does not require a jury trial on facts pertaining to a defendant's prior criminal history.

Under California law, the existence of a single aggravating circumstance is sufficient to support imposition of an upper term. (§ 1170, subd. (b).) In this case, the jury's findings pertaining to defendant's probation eligibility, and the trial court's findings pertaining to defendant's criminal record, were each sufficient to satisfy this statutory requirement, thereby making the upper term the statutory maximum for the offense. (See *Blakely, supra*, 542 U.S. at p. 303 [124 S.Ct. at p. 2537] [defining "statutory maximum" as the maximum sentence a trial court may impose without additional findings of offense-based facts].) Once the upper term became the statutory maximum in this manner, defendant's right to jury trial under the federal Constitution's Sixth Amendment was satisfied, and the trial court on its own properly could—and did—make additional findings of offense-based aggravating circumstances in support of its discretionary sentence choice to impose the upper term. Thus, under the high court's decisions in *Apprendi, supra*, 530 U.S. 466, *Blakely, supra*, 542 U.S. 296 [124 S.Ct. 2531], and *Booker, supra*, 543 U.S. 220 [125 S.Ct. 738], the trial court here did not violate defendant's Sixth Amendment right to jury trial when it sentenced him to the upper term.

V. POINTS RAISED BY MAJORITY

According to the majority, the "first question" in determining the constitutionality of California's sentencing scheme is "whether a trial judge's decision to impose an upper term sentence under the California determinate sentencing law involves the type of judicial factfinding that traditionally has been performed by a judge in the context of exercising sentencing discretion or whether it instead involves the type of factfinding that traditionally has been exercised by juries in the context of determining whether the elements of an offense have been proved." (Maj. opn., *ante*, at pp. 1253–1254.) That, in my view, is not the question at all.

As framed by the high court in *Blakely, supra*, 542 U.S. 296 [124 S.Ct. 2531], the determinative question is whether the sentencing scheme allows the trial court, relying on offense-based facts found by the court, to impose a punishment greater than that permitted under the facts found by the jury. Nothing in the high court's majority opinions in *Apprendi, Blakely*, and *Booker* suggests that the constitutionality of a state's sentencing scheme turns on whether, in the words of the majority here, it involves the type of factfinding "that traditionally has been performed by a judge." (Maj. opn.,

*ante*, at p. 1253.) What is the source for the majority's test? Perhaps the majority has looked to Justice O'Connor's *dissenting* opinion in *Apprendi*, which contained this observation: "When a State takes a fact that *has always been considered by sentencing courts to bear on punishment*, and dictates the precise weight that a court should give that fact in setting a defendant's sentence, the relevant fact need not be proved to a jury beyond a reasonable doubt . . . ." (*Apprendi, supra*, 530 U.S. at p. 535 (dis. opn. of O'Connor, J.), italics added.) Or perhaps the majority has taken its cue from Justice Breyer's *dissenting* opinion in *Booker*, which as Justice Stevens's majority opinion in *Booker* noted, relied on "traditional judicial authority to increase sentences to take account of any unusual blameworthiness in the manner employed in committing a crime" to support its argument that the Federal Sentencing Guidelines did not violate the Sixth Amendment. (*Booker, supra*, 543 U.S. at p. 234 [125 S.Ct. at p. 751].) But the *Booker* majority rejected this approach, concluding that "[t]his tradition . . . does not provide a sound guide to enforcement of the Sixth Amendment's guarantee of a jury trial in today's world." (*Ibid.*)

Hard as it tries, the majority here cannot point to any significant differences between California's sentencing law and the Washington sentencing scheme that the high court invalidated in *Blakely, supra*, 542 U.S. 296 [124 S.Ct. 2531].

The majority states that "[u]nder the California scheme, a judge is free to base an upper term sentence on any aggravating factor that the judge deems significant . . . ." (Maj. opn., *ante*, at p. 1255.) It explains: "The Legislature did not identify all of the particular facts that could justify the upper term. Instead, it afforded the sentencing judge the discretion to decide, with the guidance of rules and statutes, whether the facts of the case and the history of the defendant justify the higher sentence." (Maj. opn., *ante*, at p. 1256.) But that can also be said of the State of Washington's sentencing scheme. (*Blakely, supra*, 542 U.S. at p. 299 [124 S.Ct. at p. 2535] [The Washington law "lists aggravating factors that justify [an increased sentence], which it recites to be illustrative rather than exhaustive."].)

The majority considers it significant that under California law, "[t]he judge's discretion to identify aggravating factors in a case is guided by the requirement that they be 'reasonably related to the decision being made.' " (Maj. opn., *ante*, at p. 1255.) But that is also true of Washington's sentencing law: A sentencing scheme that would allow a trial court to base its sentence on facts *not* "reasonably related to the decision being made" would be so unfair as to violate constitutionally guaranteed principles of due process.

The majority also notes that "as a historical matter California's adoption of the determinate sentencing law reduced the length of potential sentences for

most crimes, rather than increasing them." (Maj. opn., *ante*, at p. 1256.) This aspect of our sentencing law does not differ significantly from the Washington sentencing scheme. As Justice O'Connor's dissenting opinion in *Blakely* pointed out: "The [Washington] Act neither increased any of the statutory sentencing ranges . . . nor reclassified any . . . offenses." (*Blakely, supra,* 542 U.S. at p. 316 [124 S.Ct. at p. 2544].) The *Blakely* majority voiced no disagreement with that observation.

The majority here points out that California law requires sentence enhancements to be determined by a jury beyond a reasonable doubt. (Maj. opn., *ante*, at p. 1257.) Notable by its absence, however, is any claim by the majority that this aspect differentiates our sentencing law from the State of Washington's sentencing scheme held unconstitutional by the United States Supreme Court. Similar enhancements may well have existed under the Washington law. (See *Blakely, supra,* 542 U.S. at p. 299 [124 S.Ct. at p. 2535] [noting that the standard range for the defendant in *Blakely* was based in part on a "36-month firearm enhancement"].) In invalidating the Washington law, the United States Supreme Court did not rely on the presence or absence of sentence enhancements.

The *only* difference the majority can point to between California's sentencing law and that of the State of Washington held unconstitutional in *Blakely, supra,* 542 U.S. 296 [124 S.Ct. 2531], is this: Under the invalidated Washington law a sentence outside the standard range was an " ' "exceptional sentence" ' " that must be justified by " ' "substantial and compelling reasons," ' " whereas California law imposes no such requirement. (Maj. opn., *ante*, at p. 1258, italics omitted.) Differently put, the invalidated Washington law limited to a greater extent, compared to California law, the number of instances in which Washington trial courts could impose a sentence beyond the prescribed statutory maximum. Yet nothing in *Blakely* suggests that the United States Supreme Court would have found the Washington sentencing scheme constitutional if it had permitted trial courts to exceed the standard sentencing range more often. Rather, the high court invalidated the Washington sentencing law because (1) under that scheme the trial court rather than the jury made the findings necessary to justify a sentence outside the standard range, and (2) because those court findings could be established by a preponderance of the evidence rather than by proof beyond a reasonable doubt. California's sentencing scheme shares these deficiencies with the Washington law that the high court in *Blakely* found violative of a defendant's Sixth Amendment right to jury trial.

### Conclusion

The majority insists that the United States Supreme Court's recent decisions in *Apprendi, supra*, 530 U.S. 466, *Blakely, supra*, 542 U.S. 296 [124 S.Ct. 2531], and *Booker, supra*, 543 U.S. 220 [125 S.Ct. 738] "do not draw a bright line . . . ." (Maj. opn., *ante*, at p. 1260.) To the contrary, the line the high court has drawn is bright and clear: a sentencing law is invalid when it allows a trial judge to impose a sentence beyond the "statutory maximum," which the high court defined as "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*" (*Blakely, supra*, 542 U.S. at p. 303 [124 S.Ct. at p. 2537]), unless that sentence is based at least in part on the defendant's prior criminal history. That rule is binding on us; it is not for this court to question its wisdom. Here, in sentencing defendant to the upper term, the trial court relied in part on his prior criminal history and on facts found by the jury, as permitted under *Blakely*. Therefore, I agree with the majority's affirmance of the judgment.

Appellant's petition for a rehearing was denied August 31, 2005. Kennard, J., was of the opinion that the petition should be granted.