56 Cal.Rptr.3d 255 (2007)
148 Cal.App.4th 911
The PEOPLE, Plaintiff and Respondent,
v.
Desmond BROWN, Defendant and Appellant.
No. D047721.
Court of Appeal of California, Fourth District, Division One.
March 21, 2007.
*257 Gregory Marshall, Palo Cedro, for Defendant and Appellant.
Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Mary Jo Graves, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Meagan J. Beale and Sabrina Y. Lane-Erwin, Deputy Attorneys General, for Plaintiff and Respondent.
*256 BENKE, J.
Desmond Brown was convicted of attempted murder, attempted robbery, assault with a deadly weapon, being a felon in possession of a firearm, being a felon in possession of ammunition and possession of marijuana. As to the attempted murder and attempted robbery convictions, it was found true Brown used a firearm within the meaning of Penal Code[1] sections 12022.53, subdivisions (b), (c), (d), and 12022.5, subdivision (a). As to the assault with a deadly weapon conviction, it was found true appellant used a deadly weapon within the meaning of section 12022, subdivision (b)(1).
Brown was sentenced to a term of 25 years to life plus 12 years. He appeals, arguing the evidence was insufficient to support his conviction for being a felon in possession of ammunition, the trial court violated the double punishment prohibition of section 654 in imposing terms on his convictions for attempted murder, attempted robbery and assault, violated his right to trial by jury in failing to require the jury make the factual finding necessary for the proper imposition of multiple terms and erred in imposing multiple section 12022.53 enhancements.

FACTS

A. Prosecution Case

At approximately 8:00 p.m. on November 18, 2004, as Jose Depaz was walking home he was approached by appellant and another man. Depaz recognized both men from the neighborhood and had seen appellant the day before. At their request Depaz approached the men. Appellant showed him a gun and was holding a bottle. Appellant's companion stood off to the side. Appellant told Depaz to give him his money. When Depaz said he had none appellant tucked the gun in his waistband and searched him. Appellant then hit Depaz in the face with the bottle. As appellant started to take the gun from his waistband Depaz ran. Appellant fired, hitting Depaz in the shoulder and elbow.
The day after the shooting, Depaz was shown a photographic lineup not containing a photograph of appellant and made no identification. Four days after the shooting, Depaz was shown a photographic lineup and positively identified appellant as the shooter. Depaz later identified appellant at trial.
The night of the shooting, Depaz's blood alcohol level was .15.
During a search of appellant's home, officers found two .22 caliber bullets and a .45 caliber bullet. During his arrest, marijuana was found on appellant's person.
The bullets retrieved from Depaz's body were .32 caliber.

B. Defense Case

Appellant testified he was present at the shooting but was the man who stood off to the side. He stated he did not participate in the attempted robbery, the assault with the bottle or the attempted murder. Appellant testified the man who committed the crime threatened appellant and told him not to go to the police. Afraid, appellant *258 told no one about the crime. Appellant could not remember the man's name.

DISCUSSION

A Double Punishment

Appellant argues the trial court violated the double-punishment prohibition contained in section 654 when it did not stay imposition of sentence on his convictions for attempted murder, attempted robbery and assault with a deadly weapon. Appellant argues each of the crimes had a single objective, the commission of a robbery and, thus, he; was liable for punishment for only one of the offenses.
Section 654 states an act punishable in different ways by different provisions of the Penal Code may be punished under only one such provision. The section, however, applies not only to a single act violating multiple provisions of the code but also to an indivisible course of conduct violating several statutes. Whether a course of conduct is indivisible for purposes of section 654 depends on the intent and objective of the defendant. If all the criminal acts were incident to one object, then punishment may be imposed only as to one of the offenses committed. (People v. Beamon (1973) 8 Cal.3d 625, 636-637, 105 Cal.Rptr. 681, 504 P.2d 905; People v. Saffle (1992) 4 Cal.App.4th 434, 438, 5 Cal.Rptr.2d 648.) Section 654, however, does not apply to similar but consecutive and different objectives, or to simultaneous but separate objectives. (People v. Latimer (1993) 5 Cal.4th 1203, 1211-1212, 23 Cal.Rptr.2d 144, 858 P.2d 611.)
The trial court decides whether criminal acts had one or multiple objectives. The question is one of fact, and if the trial court's conclusion is supported by substantial evidence it is upheld on appeal. (People v. Osband (1996) 13 Cal.4th 622, 730-731, 55 Cal.Rptr.2d 26, 919 P.2d 640.)
In People v. Sandoval (1994) 30 Cal. App.4th 1288, 36 Cal.Rptr.2d 646 the defendant attempted to rob a store. The clerk began to comply with the defendant's demand for money. He then, however, slammed the cash drawer closed and tried to reason with the defendant. The defendant shot the clerk and then left the store without completing the robbery. (Id. at pp. 1295-1296, 36 Cal.Rptr.2d 646.)
Sandoval argued he could not be punished for both the attempted robbery and attempted murder because they were incident to a single objective, i.e., robbing the victim. This court disagreed, concluding there was evidence to support the trial court's finding that when the clerk ceased complying, the attempted robbery ended and the object of the shooting was not to steal but rather to punish the clerk or to assuage the defendant's frustration. (People v. Sandoval, supra, 30 Cal.App.4th at pp. 1299-1300, 36 Cal.Rptr.2d 646.)
This court then quoted People v. Nguyen (1988) 204 Cal.App.3d 181, 193, 251 Cal.Rptr. 40: "`[A] separate act of violence against an unresisting victim or witness, whether gratuitous or to facilitate escape or to avoid prosecution, may be found not incidental to robbery for the purposes of section 654.'" (People v. Sandoval, supra, 30 Cal.App.4th at p. 1300, 36 Cal.Rptr.2d 646.)
In this case the trial court concluded based on substantial evidence that while appellant's first objective was to commit a robbery, the attempt to commit that crime ended when the victim stated he had no money and appellant confirmed the fact by searching him. The assault with a deadly weapon was committed, perhaps out of frustration, not to complete the robbery but to hurt the victim Appellant then shot at the victim, not to hurt him but to kill him.
*259 Appellant argues the jury's finding that the attempted murder was committed without premeditation and deliberation somehow foreclosed the trial court from finding that appellant's act of attempting to kill appellant by shooting him had a separate objective. Appellant is mistaken. To be found guilty of attempting to kill the victim, it was only necessary the jury find appellant intended to kill him. The fact that intent might not have been premeditated or deliberated says nothing about appellant's objective.

B. Factual Findings on Section 654 Issues

As noted above we have concluded the trial court properly found that appellant's acts of attempted murder, attempted robbery and assault with a deadly weapon did not arise from a single objective and, therefore, the trial court did not violate section 654 when it imposed sentences on the convictions arising from those acts. Appellant, citing Cunningham v. California (2007) ___ U.S. ___, 127 S.Ct. 856, 166 L.Ed.2d 856 (Cunningham) and Blakely v. Washington (2004) 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, argues imposing sentence on those counts was unconstitutional because the factual findings necessary for imposition of or staying terms within the meaning of section 654, i.e., whether a course of conduct is divisible and therefore gives rise to more than one act, was made not by the jury but by the trial court.
In Cunningham the Supreme Court found California's system for imposing upper terms unconstitutional because a judge and not a jury makes the factual findings necessary for the imposition of that term. It did not address, however, this state's system for the imposition of consecutive terms or the staying of terms under section 654. In People v. Black (2005) 35 Cal.4th 1238, 1261-1264, 29 Cal.Rptr.3d 740, 113 P.3d 534 (Black), our Supreme Court concluded that the jury's verdict finding the defendant guilty of two or more crimes authorizes the statutory maximum sentence for each offense. Allowing a judge to decide whether terms should be served consecutively or concurrently does not eliminate the right of a defendant to have a jury determine the elements of the charged offenses and is constitutionally proper.
The court in Black then related this reasoning to section 654, saying: "For purposes of the right to a jury trial, the decision whether section 654 requires that a term be stayed is analogous to the decision whether to sentence concurrently. Both are sentencing decisions made by the judge after the jury has made the factual findings necessary to subject the defendant to the statutory maximum sentence on each offense, and neither implicates the defendant's right to a jury trial on facts that are the functional equivalent of elements of an offense." (Black, supra, 35 Cal.4th at p. 1264, 29 Cal.Rptr.3d 740, 113 P.3d 534.)
We are both bound by this conclusion of our Supreme Court and agree with it.

C. Firearm Enhancements

Appellant notes the trial court imposed section 12022.53 firearm use enhancements on both his conviction for attempted murder and his conviction for attempted robbery. Appellant argues such sentencing violated section 654's prohibition against double punishment because both enhancements arose from the same discharge of his firearm.

1. Background

It was alleged and found true as to both the attempted murder and attempted robbery counts that appellant used a gun during *260 commission of those offenses within the meaning of section 12022.53, subdivision (b), use of a firearm, subdivision (c), intentional discharge of a firearm, and (d), intentional discharge of a firearm causing great bodily injury.
The trial court conducted a section 654 analysis with regard to the multiple 12022.53 findings attached to the attempted murder and attempted robbery convictions. The trial court noted it had found separate objectives at work during the attempted robbery and attempted murder offenses and, therefore, had imposed sentences as to both. The court concluded, however, that a section 654 analysis addressed to the section 12022.53 findings necessarily focused not on the objective in committing the crimes but in discharging the gun.
As to the attempted murder conviction, the trial court, pursuant to section 12022.53, subdivision (d), imposed a term of 25 year to life in prison. As to the attempted robbery count, the court imposed a consecutive middle term of eight months. The court imposed a term of 25 years to life pursuant to section 12022.53, subdivision (d), discharge with great bodily injury, and stayed that term pursuant to section 654. The court then imposed a 20-year term pursuant to section 12022.53, subdivision (c), discharge, and stayed it pursuant to section 654. The court then imposed a term of three years, four months pursuant to section 12022.53, subdivision (b), use of a firearm.
In its imposition of sentence on the section 12022.53 use findings, the trial court reasoned that the use of the gun in attempting to rob the victim had a different objective than the later use of the gun to attempt to kill the victim.

2. Analysis

It is undecided whether section 654 applies to section 12022.53 enhancements. In People v. Palacios (2005) 126 Cal. App.4th 428, 23 Cal.Rptr.3d 831 this court decided that it does. (Id. at pp. 452-457, 23 Cal.Rptr.3d 831.) Our Supreme Court granted review and has not yet resolved the issue. (People v. Palacios, S132144, review granted May 11,2005.)
The Attorney General argues, however, even if section 654 does apply to the imposition of multiple section 12022.53, subdivision (d), enhancements, it does not forestall imposition of such multiple enhancements in this case. He notes that if a defendant is properly sentenced on multiple crimes, it is also proper to impose firearm enhancements on each of those crimes. He notes the trial court's finding, which we have upheld, that appellant had separate objectives in attempting to rob and attempting to kill the victim.
We have concluded the trial court properly applied section 654 to the multiple section 12022.53 findings attached to the convictions for attempted robbery and attempted murder. A robbery is considered to continue until the defendant has reached a point of temporary safety. (People v. Barnett (1998) 17 Cal.4th 1044, 1153, 74 Cal.Rptr.2d 121, 954 P.2d 384.) The fact a robbery is continuing, however, does not resolve the section 654 issue that arises from the discharge of a firearm while both the robbery and attempted murder are simultaneously occurring. In this case the court concluded that while the display of the gun occurred with the objective of committing a robbery, the discharge of the gun was done after appellant no longer harbored that objective and solely as a means of killing the victim. There is substantial evidence supporting that conclusion. That being the case the trial court properly stayed pursuant to section 654, the section 12022.53, subdivision (c) and (d), enhancements and properly imposed *261 the section 12022.53, subdivision (b), enhancement as to the attempted robbery conviction.

D. Possession of Ammunition

Appellant argues the evidence was insufficient to convict him of possessing ammunition in violation of section 12316, subdivision, (b)(1). He specifically asserts the evidence was insufficient to prove he possessed "ammunition `capable of being fired from a firearm with a deadly consequence.'"
In determining whether the evidence is sufficient to support the verdict, we review the entire record viewing the evidence in the light most favorable to the judgment and presuming in support of the verdict the existence of every fact the jury could reasonably deduce from the evidence. The issue is whether the record so viewed discloses evidence that is reasonable, credible and of solid value such that a rational trier of fact could find the elements of the crime beyond a reasonable doubt. (People v. Carter (2005) 36 Cal.4th 1114, 1156, 32 Cal.Rptr.3d 759, 117 P.3d 476.)
Section 12316, subdivision, (b)(1), makes it unlawful for one, like appellant, who is forbidden to possess firearms from possessing ammunition. "Ammunition" is defined in section 12316, subdivision (b)(2), as, including but not limited to "any bullet, cartridge, magazine, clip, speed loader, autoloader, or projectile capable of being fired from a firearm with a deadly consequence."
During a search of appellant's home an officer discovered in appellant's closet what were described as two .22 caliber bullets and a .45 caliber bullet. On cross-examination the officer who found the bullets was asked if they looked "as if they were like keepsakes?" The officer answered "correct." Neither defense counsel nor the witness defined what they meant by the word "keepsake." No firearms were found in the house.
Appellant suggests the issue of the sufficiency of evidence here is like that addressed by this court in In re Khamphouy S. (1993) 12 Cal.App.4th 1130, 15 Cal. Rptr.2d 882. It is not. Khamphouy dealt not with section 12316, subdivision (b)(1), but rather with section 12101, subdivision (b). That section makes it unlawful for a minor to possess "live ammunition." The section contains no definition of the term.
In Khamphouy it was argued the evidence the ammunition was live was insufficient because no test was done to determine if the bullets found were capable of being fired. This court found that based on the circumstances surrounding the minor's possession of the bullets, a trier of fact could reasonably deduce from the evidence that the bullets were live ammunition. (In re Khamphouy S., supra, 12 Cal.App.4th at pp. 1134-1135, 15 Cal. Rptr.2d 882.)! Justice Work vigorously dissented. (Id. at pp. 1136-1138, 15 Cal. Rptr.2d 882.)
Khamphouy is irrelevant to the issue of the sufficiency of the evidence in the present case. A conviction for the possession of ammunition under section 12316, subdivision, (b)(1), does not require the ammunition be "live." The nonexhaustive list of items that are "ammunition" within the meaning of the section includes not just bullets, i.e., "a round or elongated missile (as of lead) to be fired from a firearm" (Webster's Collegiate Diet. (11th ed.2003) p. 163), or cartridge, i.e., "a tube (as of metal) containing a complete charge for a firearm and [usually] an initiating device (as a primer)" (id. at p. 190). It also includes clips, speed loaders and "projectile[s] capable of being fired from a firearm *262 with a deadly consequence." (§ 12316, subd. (b)(2).)
"Ammunition" as defined in section 12316, subdivision, (b)(2), is a very broad term that includes not just "live ammunition" or the parts that make up live ammunition, e.g., bullets and cartridges, but also items that facilitate the loading of firearms, e.g., clips ami speed loaders, and any projectile capable of being fired from a firearm with deadly effect.
The items found in appellant's closet were at least bullets and cartridges, and whether comprising live ammunition or not, they were ammunition within the meaning of section 12316, subdivision, (b)(1), (2). The evidence was sufficient.
The judgment is affirmed.
McCONNELL, P.J., and McINTYRE, J., concur.
NOTES
[1] All further statutory references are to the Penal Code unless otherwise specified.