Filed 2/13/25  P. v. Gutierrez CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B326642 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA247389-01) |
| v. | |
| JUAN CARLOS GUTIERREZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Norm Shapiro, Judge.  Affirmed.

Waldemar D. Halka, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan S. Pithey, Assistant Attorney General, Idan Ivri and Nikhil Cooper, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

In 2004, a jury found Juan Carlos Gutierrez guilty of first degree premeditated murder, second degree robbery, and attempted second degree robbery, with true findings on gang enhancements and principal-use firearm enhancements. In 2021, Gutierrez filed a petition for resentencing under Penal Code[1] section 1172.6. Following a hearing, the superior court denied the petition, finding that Gutierrez was not entitled to relief because he was the actual killer, he directly aided and abetted the murder, or he was a major participant in an underlying felony and acted with reckless indifference to human life. On appeal, Gutierrez argues the superior court erred in denying his petition. We conclude Gutierrez was ineligible for relief under section 1172.6 as a matter of law because his record of conviction establishes that he was not convicted of murder under a theory of imputed malice, but rather was convicted as either the actual killer or a direct aider and abettor. We accordingly affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A portion of the factual and procedural background is taken from this court's prior opinion. (*People v. Gutierrez* (Jan. 7, 2009, B175361) [nonpub. opn.] (*Gutierrez I*).) On our own motion, we take judicial notice of this opinion. (Evid. Code, §§ 452, 459.)

1. **Guiterrez's 2004 conviction for murder**

   1.1 **Evidence at trial**

The murder victim in this case, Edgar Canuto, was fatally shot while sleeping on the porch of a house. On the night of the

---

[1] Unless otherwise stated, all further undesignated statutory references are to the Penal Code.

shooting, Abraham Martinez and Genaro Martinez[2] were at that house to attend a party.  After the party, the men stayed drinking on the porch with several other guests, including Emilio Perez.  At Gutierrez's trial, Abraham, Genaro, and Perez each testified about the events that led to the shooting.

While the men were drinking on the porch, there was a discussion about gangs during which Perez claimed he was a former member of the 18th Street gang.  Because Abraham and Genaro did not believe his claim, Perez said he was going to call his "homeys" to prove he was a gang member.  Perez went inside the house to use the phone.  When he returned, Perez said his "homeys" were on the way.

A short time later, Gutierrez and an unidentified man approached the house.  Gutierrez asked Abraham and Genaro whether they had a problem with his "homeys," and where they were from.  Genaro told Gutierrez they were not gang members.  In response, Gutierrez hit Abraham in the face, and demanded both men hand over their property.  While Genaro said he did not have anything, Abraham gave Gutierrez his money and jewelry.  According to Genaro, Gutierrez then told his companion to get a gun and said, "We going to shot [*sic*] those motherfuckers . . . ."

Both Abraham and Genaro went inside the house, and Genaro told one of the occupants to call the police.  While they were inside, the men heard gunshots.  Perez then came inside the house and called the police.  When Genaro went back outside, he saw Canuto had been shot.  Genaro testified that Canuto had

[2]     Because Abraham Martinez and Genaro Martinez share the same last name, we refer to these individuals by their first names for clarity and convenience.

3

been asleep on the porch the entire time, and had not argued with anyone.

Perez testified that, after Gutierrez arrived at the house, he asked the men where they were from, punched one of them in the face, and ordered that man to hand over his property. Gutierrez next approached Perez's uncle and tried to take a chain from his neck, but Perez intervened. Perez asked Gutierrez for a share of the property he had taken from the men, and Gutierrez gave him a ring. Gutierrez then left, but returned a few minutes later with a gun. Gutierrez asked Perez where his friends were, and Perez told him they were inside the house. Gutierrez saw Canuto sleeping on the porch. Gutierrez said, "[Y]ou have so many friends here, I think I going [*sic*] to take revenge on this one." Gutierrez shot Canuto five or six times and then ran away.

Perez further testified that he originally had been charged with the same offenses as Guiterrez. Under a plea agreement, Perez pled guilty to robbery and attempted robbery, and admitted a gang enhancement allegation with respect to each offense. He received a suspended 15-year sentence and was placed on probation for five years. As part of his plea agreement, Perez promised to testify truthfully at Gutierrez's trial.

### 1.2    Jury verdict and sentencing

The jury found Gutierrez guilty of the first degree murder of Canuto (§ 187, subd. (a)), the second degree robbery of Abraham (§ 211), and the attempted second degree robbery of Genaro (§§ 664, 211). As to each count, the jury found the gang enhancement allegations (§ 186.22, subd. (b)(1)) to be true. As to the murder count, the jury also made true findings on the enhancement allegations that *a principal* personally used and discharged a firearm within the meaning of section 12022.53,

4

subdivisions (b), (c), (d), and (e)(1). However, the jury found the enhancement allegations that Gutierrez personally used and discharged a firearm under the same section 12022.53 provisions to be not true.

The trial court sentenced Gutierrez to a total term of 65 years and eight months to life in state prison.

### 1.3 Prior appeal

Gutierrez filed an appeal from his judgment of conviction. In September 2005, this court issued an opinion, striking the gang enhancement sentence imposed on the robbery count, but otherwise affirming the convictions. (*People v. Gutierrez* (Sept. 28, 2005, B175361) [nonpub. opn.].) Relying on the California Supreme Court's decision in *People v. Black* (2005) 35 Cal.4th 1238, we rejected Guiterrez's argument that his right to a jury trial was violated by the trial court's finding of aggravating factors at sentencing.

In February 2007, the United States Supreme Court issued an order in this case granting certiorari, vacating the judgment, and remanding to this court for further consideration in light of its decision in *Cunningham v. California* (2007) 549 U.S. 270, which overruled *People v. Black*, *supra*, 35 Cal.4th 1238. Under the mandate of the United States Supreme Court, we recalled the remittitur and allowed supplemental briefing on the aggravating factor issue.

On January 7, 2009, after granting Gutierrez's petition for rehearing, this court issued the opinion in *Gutierrez I*, *supra*, B175361, in which we again rejected Gutierrez's aggravating factor claim, struck the gang enhancement imposed on the robbery count, and otherwise affirmed the judgment of conviction.

5

## 2.    Guiterrez's 2021 petition for resentencing

On July 26, 2021, Gutierrez filed a petition for resentencing under former section 1170.95, which was later renumbered to section 1172.6.  (Stats. 2022, ch. 58, § 10.)  In his form petition, Gutierrez checked the boxes alleging he was convicted at trial of first or second degree murder under the felony-murder rule or the natural and probable consequences doctrine, and he could not now be convicted of that offense because of changes made to sections 188 and 189.  The superior court appointed counsel to represent Gutierrez and then set the matter for a hearing on the petition.

In a written response, the People asked the superior court to deny the petition following an evidentiary hearing.  The People argued Gutierrez was not entitled to resentencing because he was convicted of murder as the actual killer.  The People supported their response with a copy of this court's September 2005 opinion, along with the reporter's and clerk's transcripts from Gutierrez's trial.

In his written reply, Gutierrez asserted the jury's not-true findings on the enhancement allegations that he personally used and discharged a firearm showed that the jury did not believe he was the actual killer.  Gutierrez also argued the jury may have convicted him of murder based on a theory of imputed malice.  Gutierrez asked the court to find the evidence at trial did not prove beyond a reasonable doubt that he was guilty of murder under current law.

After granting several continuances, the superior court held a hearing on the petition on November 8, 2022.  Neither the prosecution nor the defense offered any new evidence at the hearing, but rather focused their arguments on the evidence

6

presented at trial and the jury's verdicts. Based on the testimony of Genaro and Perez, the prosecutor argued the evidence proved beyond a reasonable doubt that Gutierrez was the actual killer. Defense counsel asserted that, because Perez was the only witness who identified Gutierrez as the shooter, the jury's findings that Gutierrez did not personally use or discharge a firearm meant the jury did not believe Perez's testimony. In response, the prosecutor asserted that, even if Gutierrez was not the actual killer, he was guilty of murder as a direct aider and abettor who shared the intent to kill, and thus, was ineligible for resentencing.

After hearing the argument of counsel, the superior court denied the petition, stating: "The cases in the appellate courts tell us not to be fact finders. However, [defense counsel], you're a very good lawyer and a pretty good fact finder. Aside from that comment, the court believes, and has always believed, Gutierrez was the actual killer. However, in the face of the jury's finding of not true on the (c) and (d) sections of 12022.53[ ], the court also feels that the defendant . . . was a major participant, present, aiding and abetting, shared the specific intent to kill, and acted with reckless indifference for human life; therefore, the court is going to deny the petition."

Gutierrez filed a timely appeal.

## DISCUSSION

On appeal, Gutierrez challenges the superior court's denial of his petition for resentencing under section 1172.6 on various grounds. We conclude Gutierrez was not entitled to resentencing because the record of conviction conclusively establishes that he was not convicted of murder under a theory of imputed malice. Rather, he was convicted of first degree premeditated murder as

7

either the actual killer or a direct aider and abettor who acted with the intent to kill.  Gutierrez therefore was ineligible for relief under section 1172.6 as a matter of law.

**1.      Governing law**

In 2018, the Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) to amend murder liability under the felony-murder rule and natural and probable consequences doctrine.  (*People v. Curiel* (2023) 15 Cal.5th 433, 448 (*Curiel*); *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).)  It narrowed the application of the felony-murder rule by adding section 189, subdivision (e), which provides that a participant in the perpetration or attempted perpetration of a qualifying felony is liable for felony murder only if the person:  (1) was the actual killer; (2) was not the actual killer but, with the intent to kill, acted as a direct aider and abettor in the murder; or (3) was a major participant in the underlying felony and acted with reckless indifference to human life.  (*Curiel*, at p. 448.)  In addition, it eliminated liability for murder as an aider and abettor under the natural and probable consequences doctrine by adding section 188, subdivision (a)(3), which states that malice shall not be imputed to a person based solely on his or her participation in a crime.  (*Curiel,* at p. 449.)

Senate Bill 1437 also created "a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*Lewis*, *supra*, 11 Cal.5th at p. 957.)  Under section 1172.6, a person may file a petition with the superior court for resentencing if he or she:  (1) was charged with murder or attempted murder by means of a charging document that allowed the prosecution to proceed under the felony-murder rule, natural and probable consequences doctrine, or other theory

of imputed malice; (2) was convicted of murder, attempted murder, or manslaughter; and (3) could no longer be convicted of murder or attempted murder due to the changes to sections 188 and 189 effectuated by Senate Bill 1437.  (§ 1172.6, subd. (a).)

Upon receiving a facially sufficient petition, the superior court must appoint counsel if requested (§ 1172.6, subd. (b)(3)), and determine whether the petitioner has made a prima facie case for relief (*id.*, subd. (c)).  If the petitioner makes a prima facie showing, the court must issue an order to show cause and hold an evidentiary hearing.  (*Id.*, subds. (c), (d)(1).)  At that hearing, the prosecution has the burden of proving beyond a reasonable doubt that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to sections 188 and 189.  (*Id.*, subd. (d)(3).)  If the prosecution fails to sustain its burden of proof, the court must vacate the conviction and any allegations and enhancements attached to it, and must resentence the petitioner on the remaining counts.  (*Id.*, subd. (d)(3).)

The court may deny a section 1172.6 petition at the prima facie stage only if the record of conviction conclusively establishes that the petitioner is ineligible for relief.  (*People v. Strong* (2022) 13 Cal.5th 698, 708.)  Thus, in evaluating whether a petitioner has made a prima facie showing, the court "is entitled to review the record of conviction, which includes the jury summations, jury instructions, verdict forms, and prior appellate opinions."  (*People v. Gudiel* (2024) 107 Cal.App.5th 848, 858; see *Lewis*, *supra*, 11 Cal.5th at pp. 971–972.)  However, "[i]n reviewing any part of the record of conviction at this preliminary juncture, [the] court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis*, at p. 972.)  The

court also " 'should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' " (*Id.* at p. 971.) " '[T]he prima facie bar was intentionally and correctly set very low.' " (*Id.* at p. 972.)

We independently review whether the superior court conducted a proper inquiry under section 1172.6, subdivision (c). (*People v. Estrada* (2024) 101 Cal.App.5th 328, 337.)

## 2. Gutierrez was not entitled to relief under section 1172.6 as a matter of law

The parties dispute whether the superior court's denial of Gutierrez's petition at the November 8, 2022 hearing took place at the prima facie stage under section 1172.6, subdivision (c), or at an evidentiary hearing under subdivision (d). Gutierrez argues the court made its ruling at the prima facie stage, requiring reversal because the record does not conclusively establish that he was ineligible for relief. The People assert the court denied the petition after holding an evidentiary hearing, and in any event, Gutierrez cannot show prejudicial error because he failed to make a prima facie case for relief.

We agree with the People. Although the superior court never issued an order to show cause or made an express finding as to whether Gutierrez satisfied his prima facie showing, it appears both the court and the parties treated the November 8, 2022 hearing as an evidentiary hearing. At that proceeding, the prosecution and the defense each centered their arguments on what the evidence at trial showed about Gutierrez's culpability, and whether it established beyond a reasonable doubt that he was guilty of murder under current law. In denying the petition, the court found that Gutierrez was the actual killer, and even if he was not, he was still liable for murder as either a direct aider

10

and abettor who had the intent to kill or a major participant who acted with reckless indifference to human life. Yet, regardless of the stage at which the court made its ruling, Guiterrez failed to make a prima facie case for relief under section 1172.6 because the record of conviction establishes that he was ineligible for relief as a matter of law. (*People v. Cortes* (2022) 75 Cal.App.5th 198, 204; *People v. Garrison* (2021) 73 Cal.App.5th 735, 745.)

In its verdict, the jury found Gutierrez guilty of the first degree murder of Canuto. The record of conviction reflects that the jury was not instructed that it could convict Gutierrez of this offense under the felony-murder rule, the natural and probable consequences doctrine, or any other theory in which malice is imputed to the defendant based solely on his or her participation in a crime. Rather, the jury was instructed that to convict Gutierrez of first degree murder, it had to find beyond a reasonable doubt that Gutierrez actually committed or directly aided and abetted a premeditated and deliberate murder. Under either theory of murder, the jury was required to find that Gutierrez acted with the intent to kill.

The jury was instructed on first degree murder with CALJIC Nos. 8.10, 8.11, and 8.20. As relevant here, CALJIC No. 8.10 instructed the jury that the "defendant is accused in count 1 of having committed the crime of murder," and "[e]very person who unlawfully kills a human being with malice aforethought is guilty of the crime of murder." CALJIC No. 8.11, which defined malice aforethought, explained that "[m]alice may be either express [] or implied," and "[m]alice is express where there is manifested an intention unlawfully to kill a human being." CALJIC No. 8.20 stated that "[a]ll murder which is perpetrated by any kind of willful, deliberate, and premeditated

11

killing with express malice aforethought is murder in the first degree." It further provided that "[i]f you find that the killing was preceded and accompanied by a clear, deliberate intent on the part of the defendant to kill, which was the result of deliberation and premeditation[,] . . . [it] is murder in the first degree."

The jury also was instructed on direct aiding and abetting liability with CALJIC Nos. 3.00 and 3.01. CALJIC No. 3.00 stated, in relevant part, that "[e]ach principal, regardless of the extent or manner of participation is equally guilty," and defined principals as "those who directly and actively commit or attempt to commit the act constituting the crime," or "those who aid and abet in the commission or attempted commission of the crime." CALJIC No. 3.01 instructed the jury that "[a] person aids and abets the commission or attempted commission of a crime when he or she [1] with knowledge of the unlawful purpose of the perpetrator[,] and [2] with the intent or purpose of committing or encouraging or facilitating the commission of the crime, and [3] by act or advice, aids, promotes, encourages, or instigates the commission of the crime."

Consistent with these instructions, the prosecution primarily argued to the jury that Gutierrez was guilty of murder because he was the actual killer. The prosecution asserted that "Gutierrez is the one that pulled that trigger, absolutely," and that the murder was premeditated because he "left the scene of the crime" and "had to come back to kill" Canuto. The prosecution further argued that, even if Gutierrez was not the shooter, he was still guilty of murder as an aider and abettor because he directed his companion to " 'go get a gun' " and announced " '[w]e are going to shoot these motherfuckers,' a clear

12

expression of his intent." In describing this theory of liability, the prosecution told the jury: "[L]et's look at it in regards to the law of aiding and abetting. 'Go get a gun. We are going to shoot these motherfuckers.' [¶] What happens if somebody says, 'all right,' goes and gets a gun, and shoots those 'motherfuckers'? You guilty? You bet you're guilty. You tell somebody, 'We are going to go get a gun and shoot somebody to death,' and they do it, you know what you are? You're an aidder [*sic*] and abetter."

Gutierrez contends he may have been convicted of murder under a theory of imputed malice because the jury was given a natural and probable consequences instruction for the purpose of determining whether Perez was an accomplice to murder. At trial, the parties disputed whether Perez was an accomplice to the crimes committed by Guiterrez, in which case his testimony would require corroboration. The prosecution argued Perez was not an accomplice because he did not aid or abet the robbery or attempted robbery, and the murder of Canuto was not a natural and probable consequence of those crimes. The defense, on the other hand, argued Perez was an accomplice whose testimony lacked corroboration. In addition to providing the standard instructions on accomplice testimony, the trial court gave a modified version of CALJIC No. 3.02, which stated: "One who aids and abets another in the commission of a crime or crimes is not only guilty of that crime or those crimes, but is also guilty of any other crime committed by a principal which is a natural and probable consequence of the crimes originally aided and abetted. [¶] In order for the witness Emilio Perez to be guilty under this theory of the crime of murder, as charged in count 1, it would have to be proven beyond a reasonable doubt that [1] the crimes of robbery and attempted robbery were committed; [2] that

13

Emilio Perez aided and abetted those crimes; and [3] that a co-principal in that crime committed the [crime] of murder; and [4] the crime of murder was a natural and probable consequence of the commission of the crimes of robbery and attempted robbery."

Contrary to Gutierrez's claim on appeal, this instruction did not allow the jury to convict Guiterrez of murder under the natural and probable consequences doctrine. The instruction specifically referred to "the witness Emilio Perez," and explained the elements that would have to be proven for *Perez* to be found liable for murder under this theory. In discussing the instruction in closing argument, the prosecution stated that Perez was "not on trial here, but this would be the law you would see at his trial." Gutierrez nevertheless contends the jury may have considered CALJIC No. 3.02 in determining his guilt for murder. However, the version of CALJIC No. 3.02 given to the jury was not directed to Gutierrez's guilt at all. The trial court never instructed the jury that it could find Gutierrez guilty under a natural and probable consequences theory, and the prosecution never argued that theory to the jury. Rather, taken as a whole, the instructions only permitted the jury to convict Gutierrez of murder if it found he was the actual killer or a direct aider and abettor who acted with the intent to kill. We presume the jury understood and followed the court's instructions. (*People v. Estrada* (2022) 77 Cal.App.5th 941, 948; *People v. Cortes*, *supra*, 75 Cal.App.5th at pp. 205–206.)

Gutierrez also argues the jury's not-true findings on the personal-use-firearm enhancements constituted an affirmative finding that he was not the actual killer, which must be given preclusive effect under principles of double jeopardy, collateral

estoppel, and due process. Several appellate courts have concluded that the constitutional right against double jeopardy does not apply at a section 1172.6 proceeding. (See, e.g., *People v. Mitchell* (2022) 81 Cal.App.5th 575, 589; *People v. Hill* (2024) 100 Cal.App.5th 1055, 1068; *People v. Flint* (2022) 75 Cal.App.5th 607, 618; *People v. Hernandez* (2021) 60 Cal.App.5th 94, 111.) Some courts, however, have applied the collateral estoppel doctrine to hold that a jury's prior findings generally preclude a trial court from making a contrary finding at a section 1172.6 evidentiary hearing. (See, e.g., *People v. Arnold* (2023) 93 Cal.App.5th 376, 386–387; *People v. Henley* (2022) 85 Cal.App.5th 1003, 1020.) But even assuming that the jury's not-true findings in this case must be given preclusive effect at the prima facie stage, they do not establish that Gutierrez made a prima facie case for relief under section 1172.6. At most, these findings demonstrate that the jury may have decided Gutierrez was guilty of murder as a direct aider and abettor rather than as the actual shooter.

Direct aiding and abetting remains a valid theory of murder under current law. (*Curiel, supra*, 15 Cal.5th at p. 462; *People v. Gentile* (2020) 10 Cal.5th 830, 848, abrogated by statute on another ground as stated in *People v. Wilson* (2023) 14 Cal.5th 839, 869.) As our Supreme Court explained, "Senate Bill 1437 does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought." (*People v. Gentile*, at p. 848.) Accordingly, even if the jury found that Gutierrez was a direct aider and abettor to murder rather than the actual killer, it necessarily found that he acted with the requisite malice for murder. And where, as here, the record establishes that the defendant's conviction was based

15

on a theory of liability that remains valid under Senate Bill 1437, the defendant is not eligible for section 1172.6 relief as a matter of law. (See, e.g., *People v. Estrada*, *supra*, 77 Cal.App.5th at p. 945 [defendant ineligible for relief as a matter of law where record establishes he was convicted of first degree murder as an aider and abettor with intent to kill]; *People v. Cortes*, *supra*, 75 Cal.App.5th at p. 204 [defendant failed to make a prima facie case for relief because record of conviction demonstrates he was convicted of murder either as a direct perpetrator or direct aider and abettor]; *People v. Medrano* (2021) 68 Cal.App.5th 177, 186 [defendant's conviction for first degree murder under a direct aiding and abetting theory rendered him ineligible for relief].)

Gutierrez's remaining arguments concern the superior court's factual findings at the November 8, 2022 hearing. In particular, Gutierrez asserts that (1) to the extent the court conducted an evidentiary hearing, it failed to apply the beyond-a-reasonable-doubt standard of proof; (2) the court erred in finding that Guiterrez was a direct aider and abettor because there was no substantial evidence that he acted with an intent to kill; and (3) the court erred in finding that Gutierrez acted with reckless indifference to human life because it failed to consider his age at the time of the killing. In light of our holding that Gutierrez failed to make a prima facie showing of eligibility for relief, we need not address these arguments. "[W]e review the trial court's ruling, 'not the court's reasoning and, if the ruling was correct on any ground, we affirm.' " (*People v. Camacho* (2022) 14 Cal.5th 77, 123; see *People v. Cortes*, *supra*, 75 Cal.App.5th at p. 204 [declining to address trial court's reasons for denying a section 1172.6 petition, "as we may affirm a ruling that is correct in law on any ground"].) Because the record of conviction conclusively

16

establishes that Gutierrez was not convicted of murder under a theory of imputed malice, he was ineligible for relief under section 1172.6 as a matter of law.

## DISPOSITION

The order denying the section 1172.6 petition is affirmed.

VIRAMONTES, J.

WE CONCUR:

STRATTON, P. J.

WILEY, J.

17